THE BANK OF BLACKWELL v. JOHN DEAN, *Assignee of* BANK OF KILDARE.

(Filed Feb. 8, 1900.)

1. BANKS—*Deposits in—Special and General.* Deposits of money in a. bank are either general or special. A general deposit is one which is to be repaid on demand in money, and the title to the money deposited passes to the bank. A special deposit is one in which the depositor is entitled to the return of the identical thing deposited, and the title remains in the depositor.

2. SAME—*Presumption—Burden of Proof.* Deposits of money made in a bank in the ordinary course of business are presumed to be general, and the burden of proof is on the depositor to overcome such presumption by showing that the deposit was made under such stipulations or directions as to constitute it a special deposit.

3. SAME—*Deposits General Funds, When.* Unless there are stipulations to the contrary, deposits of money made in a bank become part of its general funds, and create the relation of debtor and creditor between the depositor and the bank.

4. SAME—*Depositor in—General Creditor.* A general depositor is merely a general creditor of the bank, and is not entitled to any priority of payment over other general creditors, in case of an assignment for the benefit of creditors, or of bankruptcy.

(Syllabus by the .ourt.)

*Error from the District Court of Kay County; before B. T. Hainer, District Judge.*

*Cline & Hill,* for plaintiff in error.

*Dale & Bierer,* for defendant in error.

Opinion of the Court by

BURFORD, C. J.: The Bank  of Blackwell, a banking  corporation  at  Blackwell, Oklahoma, on· January

2, 1897, drew its draft on the Bank of Kildare a banking corporation doing business at Kildare, Oklahoma, payable to its own order, for the sum of $400, and sent the draft by mail to the Metropolitan National Bank of Kansas City, Mo., to be placed to the credit of the Bank of Blackwell. On the same day the Bank of Blackwell sent $400 in currency to the Bank of Kildare, to cover the amount of its draft when same should be presented. The Metropolitan National Bank sent the draft to the Bank of Kildare for payment, and the Bank of Kildare cancelled the draft and issued its own draft upon the Farmers National Bank of Arkansas City, Kansas, for a like sum, and sent said draft to the Metropolitan National Bank, to settle the amount due on the draft issued by the Bank of Blackwell. The Metropolitan National Bank sent the latter draft to the Farmers National Bank of Arkansas City for payment but in the meantime the Bank of Kildare had failed and made an assignment; and the latter draft was protested for non-payment. The Metropolitan National Bank then cancelled the credit of $400 it had given the Bank of Blackwell. The Bank of Blackwell paid the $400 to the Metropolitan National Bank, and filed its claim against the assignee for the sum of $400, and alleged that the deposit was a special one for the express purpose of meeting the draft it had made on the Bank of Kildare, and asked to be paid as a preferred creditor. The assignee resisted that portion of the demand which sought to have the deposit declared a special deposit, and paid as a preferred claim.

The case was tried to the court, and a demurrer sus tained to plaintiff's evidence, and judgment rendered de-.

nying the application of the Bank of Blackwell to be made a preferred creditor. From this judgment the plaintiff in error, the Bank of Blackwell, a̤p.p.a's.

There is but one question presented by the record for our consideration, viz: Whether the deposit of the $400, made by the Bank of Blackwell in the Bank of Kildare, was a general or a special deposit. If the deposit was a general one, then the relation of debtor and creditor existed at the time of the failure of the Bank of Kildare, and the judgment of the district court must be affirmed.

The evidence in relation to this particular question is to the effect that some months prior to the transaction in question, the cashier of the Bank of Blackwell drew a draft on the Bank of Kildare, where it had no funds to its credit, and at the same time wrote and sent the following letter:

"Bank of Kildare,

KILDARE, OKLA., Aug. 26.

"Dear Sir: I have just been to the telephone and made an unsuccessful attempt to call you up, but could get no response from your office.

"I have run pretty short of exchange, but I have more currency than I have any use for; therefore, I take the liberty of shipping you $1,000 currency, and I draw on you for a like amount.

"I have been informed that owing to wheat shipments, that all the banks along the R. R. are having to ship in currency daily; hence, I trust this will be in your favor, and an accommodation, as well as to ours; however, should it not be such, you can return the currency, at our expense, and when our draft reaches you, protect the same by drawing back on us for a like amount.

"Let me hear. from you, as I may often accumulate currency, being located away from the R. R. Yours truly,

"M. E. RICHARDSON."

It seems this letter was not answered, but the money was accepted and draft paid. The Bank of Blackwell continued to make drafts on the Bank of Kildare at various times and in divers sums; and each time made a remittance of the amount of the draft.  The funds were usually sent by the mail carrier as a messenger, who receipted to the Bank of Kildare for the amount, and took a deposit slip from the Bank of Blackwell.  No other contract or agreement existed between the banks than such as the law would imply from the above letter, and their business transactions, and no directions were given other than those contained in said letter.

It is contended by the Bank of Blackwell that each remittance constituted a special deposit for the express purpose of meeting its own draft, and that no general de, os't was ever made by it in the Bank of Kildare.

A long list of authorities are  cited by  plaintiffs in error in support of their contention; some of which are applicable to the question here involved, while others relate to questions where the relation  of  principal and agent, or trustee and *cestui que trust* exist, and not that of depositor and depository.

The rules of law governing the relations of depositors and banks of deposit are well settled, and the only difficulty lies in the application of these rules to a given state of facts.

Deposits in a bank are either general or special, and the rights and liabilities of the parties with respect to

the two classes are entirely different. A general deposit is one which is to be repaid on demand in money. A special deposit is one in which the depositor is entitled to the return of the identical thing deposited.

A deposit will always be deemed to be general, unless made special by contract. (3 Am. & Eng. Enc. of Law, p. 828↯)

*Prima facie*, every deposit is general. (*Bram v. Adkins,* 77 Ill. 263.)

One of the leading cases on this question, the law of which has been generally approved and adopted by the American courts, is *Foley v. Hill,* in the House of Lords, 2 H. of L. cases, 28, in which Lord Chancellor Cottenham said:

"Money, when paid into a bank, ceases altogether to be the money of the principal. It is then the money of the banker, who is bound to return an equivalent by paying a similar sum to that deposited with him when he is asked for it. The money paid into the banker's is money known by the principal to be placed there for the purpose of being under the control of the banker. It is then the banker's money. He is known to deal with it as his own. He makes what profit of it he can, which profit he retains to himself, paying back only the principal, according to the custom of bankers in some places, or the principal and a small rate of interest, according to the custom of bankers in other places. The money placed in the custody of a banker is, to all intents and purposes, the money of the banker, to do with as he pleases; he is guilty of no breach of trust in employing it. He is not answerable to the principal if he puts it into jeopardy. If he engages in a hazardous speculation, he is not bound to keep it or deal with it as the property of his principal; but he is, of course, answerable for the amount, because

he has contracted, having received that money, to repay to the principal, when demanded, a sum equivalent to that paid into his hands. That has been the subject of discussion in various cases, and that has been established to be the relative situation of banker and customer. That being established to be the relative situation of the banker and customer, the banker is not an agent or factor, but a debtor."

The statements of Lord Cottenham received express approval by the supreme court of the United States in *Bank of the Republic v. Millard,* 10 Wall. 152. Mr. Justice Davis, in that case, said:

"It is no longer an open question, in this court, since the decision in the cases of *Marine Bank v. Fulton Bank.* 2 Wall. 252, and of *Thompson v. Riggs,* 5 *Id.* 663, that the relation of banker and customer, in their pecuniary dealings, is that of debtor and creditor. It is an important part of the business of banking to receive deposits, but when they are received, unless there are stipulations to the contrary, they belong to the bank, become part of its general funds, and can be loaned by it as other moneys. The banker is accountable for the deposits which he receives as a debtor, and he agrees to discharge these debts by honoring the checks which the depositors shall from time to time draw on him. The contract between the parties is purely a legal one, and has nothing of the nature of a trust in it. This subject was fully discussed by Lords Cottenham, Brougham, Lyndhurst and Campbell, in the House of Lords, in the case of *Foley v. Hill.* (2 C. L. & Fin. 28,) and they all concurred in the opinion that the relation between a banker and customer who pays money into the bank, or to whose credit money is placed there, is the ordinary relation of debtor and creditor, and does not partake of a fiduciary character, and the great weight of American authority is to the same effect."

In a note to the case of *The Franklin Bank*, (1 Paige, ch. 249,) reported in 19 Am. Dec. 413, the authorities on this question are collated, and the law correctly stated.

The exceptions to the general rule that when deposi"s of money are made in a bank the title passes to the bank, are those cases in which the bank becomes bailee or agent of the depositor, the title to the thing deposited remaining in the depositor.    Of this latter class is the case of *Peak v. Ellicott*, 1 Pac. 499, cited by plaintiff in error.    Peak executed his note to the bank for a loan of $782.50; before the note fell due the bank assigned the note to another party.    Afterwards, at the request of the cashier of the bank that he should pay the note, and upon his promise to send and get the note, Peak de- livered to the cashier the amount of the note before it was due, and the cashier executed a receipt for said sum in payment of the note, but the bank failed to pay the note or any part thereof, and appropriated the money to its own use.    It was held that the relation of prin- cipal and agent existed; that Peak did not deposit the money in the bank, but delivered it to the cashier in pay- ment of his note, and the bank was his agent to make the payment; that the money did not become the property of the bank, and that as the agent had mixed the money with its own funds it could be followed, and a like amount recovered.

The other cases cited by plaintiff in error are either of the same class, or of cases where it was found that the bank was a trustee of the owner of the funds, and the relation of trustee and *cestui que trust* was found to ex- ist, and the relation of debtor and creditor did not arise.

There is still another class of special deposits, where the article deposited is placed in the custody of the depository, but the control is retained by the depositor, by means of individual boxes, or safety vaults within the general depository. As a general rule, in case of a special deposit, the depository undertakes to keep and return the identical thing deposited. If it is sealed up, he cannot open it. If it is money, he has no right to use it or open an account with the depositor, but must lay away the very identical coins or bills deposited, and return or deliver them according to the stipulations of the depositor.

In determining whether the transactions between the Bank of Blackwell and the Bank of Kildare constituted a special or general deposit, the foregoing general rules must be kept in view. The Bank of Blackwell was short on exchange. It had an excess of currency; by reason of certain conditions of trade and the demands upon banking facilities, the cashier thought the conditions were the reverse with the Bank of Kildare. He thought it was in need of currency and was having to ship it. He thought to confer a mutual benefit, by transmitting currency to the Bank of Kildare, and using its credit for purposes of exchange. To accomplish this he drew drafts on the Bank of Kildare, payable to order of his own bank, and sent them currency to meet the drafts as they were returned for payment in the course of business. How could this benefit the Bank of Kildare if it could not use this currency or take any account of it on its books? Was the Bank of Kildare to allow the Bank of Blackwell to use its credit, and permit it to check on it when it had no funds to draw against, and they lay away in a private

drawer the money sent to meet the draft, and when the draft came in, send this identical money to the holder of the draft in payment of it? We do not understand that banks are organized for such purposes, or loan their credit in such way for accommodation without any reciprocal benefits.

When the Bank of Blackwell made its draft of $400 on the Bank of Kildare, it had no funds on deposit in that bank.    Such draft constituted an overdraft.    It then made a deposit with the bank to cover the overdraft, and to supply the fund to its credit, against which it had drawn, and which, under ordinary rules of business, should have been on deposit before it drew the draft. Otherwise, the Bank of Kildare was doing business for the Bank of Blackwell at its own expense, and without any reciprocal benefits.

The burden was on the Bank of Blackwell to show by evidence, clear and satisfactory, that its deposit of $400 was not made in the ordinary course of banking business; that it was made as a special deposit under express stipulations or directions which took it out of the ordinary or general rules or usage.    This it failed to prove.    The deposit having been made in the ordinary and usual mode of making deposits between banks doing business with and for each other, the law will presume that the deposit was a general one, until the contrary is established by competent proof.    It cannot be inferred from such unsatisfactory proof as was made in this case. If persons desire to make their deposits special, and take them out of the ordinary and usual course of business, they must expressly stipulate or direct to that effect. In

the case at bar no such express stipulations were entered into, and no such express directions given.

The Bank of Blackwell is a general creditor of the Bank of Kildare, and is only entitled to share *pro rata* with other general creditors.

The judgment of the district court is affirmed at costs of plaintiff in error.

Hainer, J., having presided in the court below, not sitting; all of the other Justices concurring.