## WESTERN CASUALTY & GUARANTY INS. CO. v. BOARD OF COM'RS OF MUSKOGEE COUNTY et al.

No. 7619—Opinion Filed August 8, 1916.

(159 Pac. 655.)

**1. Depositories—Bonds—Estoppel to Deny Liability.**

One who guarantees by bond the payment of public funds deposited by a county treasurer in a bank designated as a county deposi-

tory, under the provisions of section 1540, Rev. Laws 1910, may not defeat liability on the bond by showing that the designation of such bank as a county depository was irregular or illegal.

## 2. Same—Validity of Bond.

Where a depository bond executed pursuant to the provisions of said section 1540, contains the exact conditions imposed by the statute, and in addition, other conditions which are not provided by the statute, tending to limit or evade liability, the bond will be upheld as to the conditions imposed by statute, and the other provisions will be treated as surplusage.

(Syllabus by Edwards, C.)

Error from Superior Court, Muskogee County; H. C. Thurman, Judge.

Action by the Board of County Commissioners of Muskogee County against the First State Bank of Wainwright and others. Judgment for plaintiff, and defendant Western Casualty & Guaranty Insurance Company orings error. Affirmed.

Zevely, Givens & Stoutz, for plaintiff in error.

Fred P. Branson, Co. Atty., W. E. Disney, B. B. Blakeney, and J. H. Maxey, for defendants in error.

Opinion by EDWARDS, C. For convenience and brevity the board of county commissioners will be referred to as the Board, the Western Casualty & Guaranty Insurance Company as the Western Company, and the First State Bank of Wainwright as the Bank.

This is an action in which the board of county commissioners of Muskogee county brought suit against the First State Bank of Wainwright and the Western Casualty & Guaranty Insurance Company upon a depository bond, the petition alleging that on December 1, 1912, W. H. Wainwright was the duly elected, qualified, and acting county treasurer of Muskogee county, and continued to act as such until the 31st day of October, 1913; that on or about said 1st day of December, 1912, the said Bank was a corporation under the banking laws of the state of Oklahoma, engaged in the banking business, at Wainwright, Muskogee county; that the defendant the Western Casualty & Guaranty Insurance Company was a corporation under the laws of Oklahoma, authorized and empowered to write indemnity and depository bonds; that on or about the 1st day of December, 1912, the board of county commissioners of Muskogee county designated the said Bank as a county depository for the deposit of county and other funds in the hands of the treasurer of said county, and that said Board at the time of designating said Bank required that said Bank should

execute a bond with good and sufficient surety, in the sum of $10,000, to secure the deposit of the county funds and funds deposited with said Bank by the said treasurer, and that on the 3d day of December, 1912, the Bank tendered to the county treasurer a bond in said sum executed by it and the said Western Company, as surety, the said bond containing conditions as follows:

"Now, therefore, the condition of this obligation is such that if the said First State Bank of Wainwright, Oklahoma, shall safely keep the moneys constituting the county funds of Muskogee county, Oklahoma, and shall promptly pay all checks and drafts drawn by said treasurer against such county funds, including all interest to accrue thereon at the agreed upon rate per centum per annum on all monthly balances, then this obligation to be void: otherwise to remain in full force and virtue. Provided, however, and upon the following conditions: First. That in the event of any default on the part of the principal, written notice thereof, with a certified statement of the facts showing such default and the date thereof, shall within thirty days after such default, be delivered to the surety at its office in the city of Oklahoma City, Okla."

Then follow allegations of a conspiracy between the county treasurer and the president of said Bank and allegations of embezzlements and of the forging, altering, and mutilating the records of said Bank. It is alleged further that the county treasurer was, in fact, the owner of the stock of said Bank, and had secretly transferred the same to other parties, and made the Bank's records show that other parties were the owners of the stock of said Bank; that the records of the county treasurer were falsified to show that no money belonging to said county was on deposit in said Bank. Then it is alleged that on the 16th day of October, 1913, the said Bank closed its doors and refused the payments of money on deposit in said Bank, refused to pay checks and drafts drawn by the said county treasurer, and that on the 19th day of December, 1913, this plaintiff discovered that an amount in excess of $10,000 of the funds of said county was actually on deposit in said Bank, and had been continuously since the execution and approval of said bond; that plaintiff at once served written notice of said default upon the said Western Company at its office in Oklahoma City, and attached thereto a certified statement, showing the facts so far as known by the plaintiff.

Plaintiff alleges: That it did not discover that there was any money of said county on deposit in said Bank prior to December 19, 1913, and sets out at length the concealment practiced which prevented it from knowing

of such deposit. Plaintiff alleges that it has done and performed all the conditions of the said bond, but that the said Bank has refused to pay checks drawn by the treasurer on said deposit, and that there has accrued upon said deposit, at the agreed rate, interest in the sum of $600. Judgment is prayed against the said Bank for the sum of $60,600, and against the Western Company for $10,-000, with interest. Motions to strike out certain portions of the petition were filed by the defendant Western Company, and, after being overruled, a demurrer was filed, which was overruled, and the said defendant then answered, setting up four separate defenses, the first being a general denial, except as to the execution of the bond sued upon and the corporate existence of the parties; second, the defendant alleges, in substance, that at the time the said Bank was designated as a county depository, W. H. Wainwright, the county treasurer, owned a large amount of the stock of said Bank, and that the designation of said Bank was therefore in violation of the provisions of section 1540 of the Revised Laws of Oklahoma, and the bond, being in furtherance of said unlawful purpose, was without validity and not binding; third, that the said bond sued upon provided that in the event of default on the part of the principal, written notice, with a certified statement of the facts showing such default, should, within 30 days after such default, be delivered to the surety at Oklahoma City; that the said Bank, on the 16th day of October, closed its doors and refused all payments of money on deposit in said Bank, and the plaintiff, not having within 30 days thereafter given notice as provided in said bond, is not entitled to recover; fourth, that the bond was procured by fraud, in that the county treasurer was the owner of a part of the capital stock of the said Bank, and the designation thereof as a depository was illegal. That the defendant Western Company was not aware of the ownership of stock by the county treasurer and, if such fact had been known, would not have executed said bond. That it was the duty of the county commissioners to know whether said county treasurer was interested in said Bank, and whether said Bank might be legally designated a depository. That by reason of the fraud as aforesaid the bond is null and void. The plaintiff filed a general denial by way of reply. Judgment was entered by default against the Bank, express reservation being made of the cause of action upon the depository bond upon which the Western Company is here sued

At the time of the rendering of the judgment against the Bank, an amended petition was filed by the plaintiff, which amounts in effect to a severance of the causes of action against the Bank and the defendant, the

Western Company. The cause as between the plaintiff and the Western Company was referred to and tried by a referee, who took the evidence and made findings of fact and conclusions of law, which were duly transcribed and filed in the superior court. Later, upon motion, the report was confirmed, and judgment entered for the plaintiff and against the defendants, the Bank and the Western Company, jointly and severally, for the sum of $10,000, with interest thereon at 2½ per cent. per annum, from the 17th day of October, 1913. Proper motions for new trial were filed and overruled and exceptions saved, and within due time the cause was appealed to this court. The record is voluminous, containing about 800 pages.

The contentions of plaintiff in error may be summarized as follows: First, that the company is not bound except for legal deposits; second, that the bond is not valid; third, that the county failed to give notice as the bond provides.

These contentions will be noticed in the order presented. Upon the first proposition, that the company is not bound except for legal deposits, the plaintiff in error contends that the bond in question is one to guarantee the payment of deposits only, and, as it appears that there was no legal authority for making the deposits by the county treasurer in the bank, that the bond is not liable, whether such lack of legal authority be based upon violation of law or lack of facts justifying the deposit; that the title to the funds never passed, and the relation of debtor and creditors never arose; that the funds illegally deposited can be followed as far as they can be traced, and if they are lost, the official bond of the treasurer is liable. The pertinent part of the law with reference to county depositories to be here considered is found in section 1540, Rev. Laws 1910, and is:

"In all counties the county treasurer shall deposit daily all the funds and money of whatsoever kind that shall come into his possession by virtue of his office as such county treasurer in his name as such county treasurer, in one or more responsible banks located in the county and designated by the board of county commissioners as the county depositories: Provided, that there shall not be deposited of such funds in any one bank at any one time, a greater amount than the capital stock of said bank. Such bank shall receive all moneys, checks or drafts at par and pay interest on the average daily balances at the rate of two and one-half per cent. per annum, and shall credit the same monthly to the account of such treasurer. Before directing or authorizing the deposit of any such funds aforesaid the board of county commissioners shall take from each such bank a bond in a sum equal to the largest approximate amount that may be deposited in each respectively.

at any one time; said bond may be that of some surety company empowered to do business in the state. * * * The condition of said bond shall be that such deposit shall be promptly paid on the check or draft of the treasurer of such county, and the bondsmen of said treasurer shall not be liable for such deposit * * * Provided, that it shall be unlawful for the board of county commissioners of any county to deposit any funds of their county in any bank in which the county treasurer or any member of the board of county commissioners shall be the owner of any stock or otherwise pecuniarily interested." .

Plaintiff in error cites the case of Watts v. Commissioners of Cleveland Co., 21 Okla. 231, 95 Pac. 771, 16 L. R. A. (N. S.) 918, as authority for the proposition advanced; but that case is based upon the law as it existed prior to the passage of the present law authorizing the designation of depositories, section 1540, supra, and the holding is virtually to the effect that it was unlawful for a county treasurer to make a general deposit of county funds, the court saying:

"The deposit fund involved in this case was placed in the bank as a general deposit by Mr. Hughes as treasurer of Cleveland county. Under ordinary circumstances such a deposit would constitute a loan, and would create the relation of debtor and creditor between Cleveland county and the bank. We are convinced, though, that under the laws of the territory of Oklahoma, as they existed at the time of this transaction, such relation was not thereby created. 'A general deposit in a bank is a loan.' Bank of Blackwell v. Dean, 9 Okla. 626, 60 Pac. 226. Section 6062, Wilson's Revised & Annotated Statutes of Oklahoma of 1903, makes it a crime for a county treasurer to loan public funds. Section 1239, Wilson's Revised & Annotated Statutes of 1903, provides that: 'The books, accounts, and vouchers of the county treasurer, and all moneys, warrants or orders remaining in the treasury, shall at all times be subject to the inspection and examination of the board of county commissioners, and at the regular meetings of the board in January and July of each year, and at such other times as they may direct, he shall settle with them his accounts as treasurer, and for that purpose he shall exhibit to them all his books, accounts and money, and all the vouchers relating to the same, to be audited and allowed, which vouchers shall be retained by them for evidence of his settlement; and if found correct the accounts shall be so certified : if not he shall be liable on his bond.' It would seem from this section and the section making it a crime to loan public funds that the statutes of Oklahoma, prior to the passage of the bill providing for the creation of public depositors, did not permit county treasurers to make general deposits of public funds, but it was his duty to at all times have the funds of the county under his control so that, immediately upon being directed to do so by the board of county commissioners, he may exhibit such funds to said board."

Subsequent to the transactions which were involved in that decision the present law was enacted, in 1905. Plaintiff in error also cites the case of Hinton v. State of Oklahoma ex rel., etc., 57 Okla. 777, 156 Pac. 161, in which it is held :

" 'The conditon of said bond shall be, that such deposit shall be promptly paid on the check or draft of the treasurer of such county, and the bondsmen of said treasurer shall not be liable for such deposit.' Held, that the sentence, 'the county commissioners shall take from each such bank (depository) a bond in a sum equal to the largest approximate amount that may be deposited in each respectively, at any one time,' was intended to, and does by implication, limit the amount that may be legally deposited in each bank, respectively, to the amount of the depository bond; and. held, further, that if the county treasurer deposits the funds of the county in such depository in an amount in excess of such bond, and the same is lost by the failure of the bank, the treasurer and his surety are liable for the amount so lost in excess of the depository bond."

We are unable to see how the holding in this case will avail plaintiff in error, for here the court simply holds that the bond of the county treasurer is not liable for the amount of a deposit covered by a depository bond, but is liable for a deposit in a designated bank in excess of the depository bond. Following the rule of limitations as expressed in Board of Com'rs v. Dunlop, 17 Okla. 53, 87 Pac. 590, where it is said :

"When the depositories are designated, and their bonds approved, it becomes the duty of the county treasurer to use these banks as depositories for the county money in his hands, but it is left to his discretion to fix the amount to be placed in any given bank, subject, however, to the provisions that he shall not deposit an amount greater than the capital stock of such bank, nor greater than the bond given as security."

But the case at bar is not upon the treasurer's bond, but upon the depository bond, and it is not sought to hold the depository bond liable for any sum in excess of the amount expressed therein, but merely to the extent of such bond, while the Hinton Case, supra, holds that for deposits in excess of the depository bond, the treasurer's bond is liable. The referee, to whom this action was referred and whose findings have the force and effect of the verdict of a jury, has found that from the time of the execution of the bond in controversy until the closing of the Bank by the bank commissioner, there was on deposit in said Bank funds of Muskogee coun-

ty in excess of the amount designated in the depository bond.

The mere fact that the treasurer had on deposit in the depository Bank an amount in excess of the bond of such depository Bank would not make the deposit unlawful. In Yellowstone County v. First Trust & Savings Bank, 46 Mont. 439, 128 Pac. 596, the court had under consideration a statute making it a felony for a treasurer to deposit in a bank more money than he had received security for, and the court there held that neither the validity nor the sufficiency of the bond was impaired, and permitted the recovery to the extent of the penalty named in the bond, and permitted a trust to be imposed for the remainder of the deposit in excess of the bond. In the case at bar, neither an excessive deposit nor the fact that the books of the Bank and of the county treasurer fail to show the true status of the account will affect the legality of the deposit.

Upon the second proposition argued, that the bond is not valid, it is urged that the designation of the Bank as a depository is illegal; that it is against the plain letter of the law (section 1540, supra), that the board of commissioners must know that a bank is a proper depository before designating it, and that in this case the designation was wholly illegal and a fraud, and the bond sued upon, having been procured and given in furtherance of said fraud, is wholly void, and the depositing of money in the Bank by the county treasurer, while owning stock therein, is an embezzlement by the treasurer for which the depository bond is not liable. If the Board in making the designation had knowledge of the ownership of stock in the Bank by the county treasurer, there might be some force in the contention; but it is nowhere intimated that the Board had any such knowledge or information. If the Surety Company which signed the bond was deceived, so also was the Board deceived. The mere designation of the Bank as a depository by the Board is not, in contemplation of law, the reason for depositing the county funds in such bank. Such designation is but one of the necessary steps preceding a deposit. The giving of a depository bond is another step, and if the Board must know before making the designation that the Bank is a proper one to be designated, it would seem to follow that the bonding company also should know that the Bank is a proper one to bond, and yet the bond sued upon contains this recital:

"Whereas, the board of county commissioners of Muskogee county, state of Oklahoma, duly acting in accordance with law, has designated the First State Bank of Wainwright Oklahoma, as a depository of the county funds of Muskogee county, state of Oklahoma, and has designated the sum of $10,000 as the amount of the bond to be given by said Bank: Now, therefore," etc.

We are not at all sure that had the Board known at the time it designated said Bank as a depository that stock was owned therein by the county treasurer, even this knowledge would have rendered the bond void. In the case of Henry County v. Salmon, 201 Mo. 136, 100 S. W. 20, the court in discussing the case of County Com'rs v. State Bank, 64 Minn. 180, 66 N. W. 143, says:

"In County Commissioners v. State Bank, supra, the board of county commissioners had designated the depositary in the teeth of a statute requiring the board of auditors to make the designation. In a suit on the bond the sureties defended on the theory the designation was void. What was said in disposing of that contention is applicable in this case, viz.: 'In principle, this case falls within the rule that the sureties upon an official bond, by virtue of which the officer has been inducted into office, cannot, when called upon to answer for his official defaults, escape liability upon the ground that their principal was not duly elected or appointed, or did not legally qualify. Mechem. Pub. Off., sec. 341; 2 Brandt, Sur., sec. 521; State v. Bates, 36 Vt. 387; People v. Evans, 29 Cal. 429; Byrne v. State, 50 Miss. 688; Taylor v. State, 51 Miss. 79.'"

The case of Buhrer v. Baldwin, 137 Mich. 263, 100 N. W. 468, is very much in point, in which case it is held:

"One who guarantees the payment of county funds, to be deposited in an unincorporated bank, is liable to the county therefor, although the contract to deposit in such bank was prohibited by statute and void."

In the body of the opinion the court says:

"It is insisted that no action can be maintained on the writing signed by defendants, because it was executed in violation of law. The law in question is Act No. 393 of the Local Acts of 1879, sec. 1. This act made it 'the duty of the county treasurer of the county of Wayne to deposit daily his entire receipts from all sources, and all moneys, drafts, or checks on hand, to the credit of the county of Wayne, in such bank or banks, incorporated under the laws of this state or the United States, as may be designated by the treasurer and the board of auditors of said county as the depository of the funds of the county.' The act makes it a felony for the county treasurer to violate its provisions. It is contended that as A. Ives & Sons was a partnership, the deposit in question in its bank was prohibited and made a felony by this statute, and that, as a consequence, the undertaking of the defendants was an illegal contract, which cannot be enforced. If this suit is to be regarded as the personal suit of the county treasurer, who has violated the

statute, there would be great force in this contention. It is earnestly insisted that the court should so regard it; and it is said that, if this action should fail, the county will lose nothing, since it is fully indemnified by the bond of the county treasurer. We cannot regard this suit as the personal suit of the county treasurer. The form of the declaration, the prosecution of the suit by the prosecuting attorney, the objection already discussed and disposed of, all indicate that it is a suit by the county to recover its money. The fact, if it be a fact, that the people of the county of Wayne have double security for this money is a circumstance of no legal importance. If they are so secured, the officials of that county, and not this court, have the right to determine to which security they will first resort. They have determined to resort to the obligation of defendants. Nor does this record enable us to say with certainty that the sureties on the treasurer's bond are now responsible. It cannot therefore be said that the county will not lose its money if defeated in the present action.

"Assuming this suit to be the suit of the county to recover the money illegally deposited with A. Ives & Sons, does the statute prevent the enforcement of the contract? Did the Legislature, in enacting the statute of 1879, intend that those who agreed to make good a loss to the people, caused by a violation of that law, should be released from their contract? No such legislative intent is expressly declared in the statute. Shall it be inferred? The learned trial judge, in speaking of the statute, said: 'It simply means that this was a protection to the money of the people * * * against the county treasurer depositing it in a place that the lawmakers deemed insecure. * * * This statute was not enacted for the purpose of preventing the county getting back their money. * * * It seems to me it would be a very unreasonable interpretation of the statute' to hold, 'because a public officer violates the law, and does an act that he has no right to do, that therefore the people lose their money.' This reasoning, in our judgment, is sound, and is sustained by authority."

We believe that the surety on the bond cannot question the validity of the bond for this reason, and that the validity of the bond is not affected by any error on the part of the Board in the designation of the Bank as a depository.

Upon the third proposition argued, that the county failed to give notice, as in the bond specified, it is urged by plaintiff in error that, as provided by section 1152, Rev. Laws 1910, a surety cannot be held beyond the express terms of his bond; that he has liberty of contract, and that a sensible construction of the contract (bond), must be that the surety is liable only on condition that notice

of default be given within 30 days thereafter. That the default does not create the liability, but it is the default, plus the compliance with the contract of suretyship which creates the liability. In answer the Board contends that the provision requiring notice is too indefinite, in that the bond does not designate by whom such notice should be given, and that if it is contemplated by the bond to impose additional duties on a county officer, whose duties are fixed by law, that such condition is for that reason void; that conditions and exceptions are to be strictly construed in favor of the insured, to avoid forfeiture and to afford indemnity (19 Cyc. 657); that the bond, being given for a public purpose and pursuant to the provisions of law, is to be construed as a statutory bond and any conditions, exceptions, or limitations in excess of the requirements of law are unauthorized and inoperative and are to be treated as surplusage. The Board further contends that the proviso requiring notice is in conflict with section 9, art. 23, of the Constitution, and for that reason is void. and, lastly, contends, that as the record disclosed that notice was given within 30 days from the time the board discovered the character of the default, the notice is timely given.

Numerous authorities are cited by both parties in support of their respective contentions. We are impressed with the importance of the questions raised, and have sought to give careful consideration to the authorities cited and the arguments advanced. We believe, however, that there is a distinction to be observed between bonds given to private concerns, where both parties have full liberty of contract, and bonds given pursuant to a statute, as in this case, for the public benefit. We believe that a bonding company, giving a bond under the provisions of a law and for a public purpose, is bound to know the law and to know the limitations fixed by the law upon the authority of the agents for the public. with whom it contracts. Here the statute fixes the conditions of the depository bond. Section 1540, supra. This law with all its terms, no more and no less, becomes a part of the bonding contract. The Board has no authority to waive any part of the statute or add anything to it. The bond in controversy, as executed, contains all the conditions required by the statute, with the addition of a condition requiring notice, which tends to modify the statute and to limit the liability. This additional condition, we think, may not be imposed. In the recent case of Southwestern Surety Ins. Co. v. Davis, 53 Okla. 332, 156 Pac. 213, this court. speaking through Mr. Justice Hardy, held:

"The bond sued on being a statutory one, and given in an attempt to comply with the

statute, in order to avoid such a result, the court will read into the bond the statutory conditions and construe the same to guarantee the fulfillment of contracts entered into within the year."

In the case of Henry Co. v. Salmon, supra, it is said (syllabus) :

"To ascertain the liability of the sureties on the bond given by a banker as depositary of county funds, Laws 1901, p. 101 (Ann. St. 1906. pp. 3344, 3345), providing for the selection of county depositories, must be read into the bond and the liability of the sureties must be determined by its provisions."

The Supreme Court of New York, in the case of Trustees of the Village of Bath v. McBride, 81 Misc. Rep. 618, 142 N. Y Supp. 1014, holds (syllabus) :

"Where the form of an official bond differs from that prescribed in the statute, if founded upon a good consideration, the liability of the surety is measured by the provisions of the statute rather than the language of the obligation itself."

In the case of Higdon v. Fields, 6 Ala. App. 281, 60 South. 594, it is held that a bond, intended by the obligors to be the official bond of a public officer, is operative as such. though not conditioned as prescribed by the Code prescribing the condition of official bonds.

In the case of Board of County Commissioners v. Security Bank, 75 Minn. 174, 77 N. W. 815, the surety had entered into an obligation conditioned that the bank—

"shall well and truly hold said funds, with accrued interest, subject to draft, and payable at all times on demand, and shall well and truly pay over on demand according to law all of said funds which shall be deposited in said bank pursuant to said designation."

The treasurer of the county had $13,000 of sinking funds which were held to meet county bonds maturing in the future. He found that he could deposit this money on time deposit and take a time certificate of deposit and receive 3 per cent. interest when moneys deposited subject to check only drew 2 per cent. interest. The bank failed, and the bond company claimed this money had not been deposited subject to check, and was not within the obligations of the bond. The court said, referring to that defense :

"This would undoubtedly be so if the county treasurer has authority to make a deposit on such terms, or the board of county commissioners had the power to authorize him to do so ; for the bond clearly refers to and covers only deposits subject to draft, and payable on demand, and on which the Bank was to pay interest on monthly balances at 2 per cent. in accordance with its proposal to the county commissioners pursuant to Gen. St. 1894, sec. 731. The only authority of either the county treasurer or the board of county commissioners to lend county funds (for that is what it amounts to) is that given by Laws 1881, c. 124, as amended (G. S. 1894, secs. 729-735, inclusive). They have no authority to deposit county funds in any other place or on any other terms than those prescribed by the statute. This applies to all county funds, whatever the purpose for which they were raised. It is apparent from various provisions of the statute that it neither contemplates nor authorizes time deposits, and section 729 expressly provides that all deposits are to be on condition that they 'shall be held subject to draft and payment at all times. on demand' ; and every one is bound to know the law. The Security Bank was bound to receive on deposit, up to the statutory limit, all county funds offered in accordance with the provisions of the statute, and on the terms of its proposal."

We think that this case squarely strikes down the provision of the bond requiring any notice to be given. As said by the court, the bonding company was bound to know the law, and to know that the Bank obligated itself to pay upon demand, and therefore secured the performance of that duty. It could not restrict its obligation in any form because the county officers were without power to consent to such restriction. In the same case (Board of County Commissioners v. Security Bank, supra), the court said, in discussing whether or not this bond should be measured as public bonds, as follows :

"While the Bank may not have been a 'public officer,' in the popular sense of that term, yet in the matter of the county money deposited with it, it was performing public duties, or duties to the public, and pro hac vice was a public officer. Its duty was to the public, and its bond to secure the performance of that duty was for the benefit and protection of the public. The case falls within all the reasons of the rule, founded on public policy, which makes certain distinctions between the rights and liabilities of sureties on private bonds and sureties on bonds given to secure the performance by public officers of their official duties to the public. The case must be determined by the rules applicable to the latter."

It is true, of course, that if a bond omitted the statutory obligations, it could not be held to be a statutory bond. In such case it would be a common-law bond, and would be measured, of course. by the terms of its obligations ; but when the bond contains the exact language of the statute, and follows with other provisions which are not required by statute. it is generally held that such a bond is a statutory bond, and the other provisions will be treated as surplusage. Being then a statutory bond under the terms of the statute, the liabilities imposed by the

statute become a part of the bond. In other words, the statute defines the duties of the public officer, to wit, the county depository, and a bond conditioned in the language of the statute will be held to protect the county against the nonperformance of these duties, and clauses attempting to limit and restrict that right will be ineffective and inoperative.

We are further of the opinion that if the provisions in regard to notice were sustained, that notice, given within 30 days after the discovery that the county had money on deposit in the Bank, with a certified statement of the facts, would be timely; that the condition of the bond requiring notice, if it were upheld, would not require the performance of impossible conditions, nor the performance of conditions which would render the insurance of the bond practically worthless, but calls only for a reasonable construction. Having held, however, that the Board is without power to barter away the benefits of the statute, and that the conditions in excess of the statute sought to be imposed are inoperative, it is not necessary to pursue the latter proposition further.

The judgment is affirmed.

By the Court: It is so ordered.