SPRY, Plaintiff, v. HIRNING, Superintendent of Banks, et al,
Defendants.

(191 N. W. 833.)

(File No. 5179.   Opinion filed January 22, 1923.)

1.   **Banks and Banking—Deposits—Bailment—Guaranty Funds—De-
livery of Bonds to Bank Held Bailment, Not Deposit, So That
On Conversion of Bonds Depositor Had No Right to Preferen-
tial Payment From Bank Guaranty Fund.**

Where a customer delivered his Liberty Bonds to a bank to
be transmitted by it to another city for safe-keeping, receiving
a certificate for the par value thereof payable to the order of
the customer in Liberty Bonds of that issue, the transaction
was a bailment and not a deposit of the bonds, and the cus-
tomer is not entitled to preference in payment from the bank
guaranty fund, after the bank converted the bonds to its own
use and then became insolvent.

2.   **Banks and Banking—Special Deposit—Bailments—Guaranty Fund
—Delivery of Bonds Without Obligation For Return of Iden-
tical Bonds is Not "Special Deposit."**

A delivery of bonds to a bank for safekeeping, without a
provision that the identical bonds were to be returned to the
customer but only that bonds of the same issue should be re-
turned, is not a special deposit, to constitute which it must
appear from the agreement of the parties that a return in
kind was contemplated.

Original application for mandamus by W. B. Spry against
John Hirning, as Superintendent of Banks, and others.   Applica-
tion for writ denied.

*Danforth & Barron,* of Sioux Falls, for Plaintiff.

*Byron S. Payne,* Attorney General, and *E. D. Roberts,* As-
sistant Attorney General, for Defendants.

Plaintiff cited:   Rev. Code 1919, Secs. 8977, 9013, 9021;
Fogg v. Tyler (Me.), 30 A. & E. Ann. Cases, 41 and note; An-
derson v. Pacific Bank, 112 Cal. 598, 44 Pac. 1063; Iams v.
Farmers State Bank (Nebr.), 165 N. W. 145; American State
Bank v. Wilson, 204 Pac. 709; Fourth National Bank v. Wilson,
204 Pac. 715; Abilene National Bank v. Dolly, 32 L. R. A. 1065;
3 R. C. L., Sec. 146, p. 517; Cutler v. American Exchange Bank
(N. Y.), 21 N. E. 710, 25 R. C. L., Secs. 217 and 218, pp. 961
to 964.

Respondent cited:   Bank v. Wilnon, 204 Pac. 715; Lank-

·ford v. Schroeder (Okla.), 147 Pac. 1049; Columbia Bank & Trust Co. v. U. S. F. & G. Co. 126 Pac. 556; Iams v. Bank (Nebr.), 165 N. W. 145, 7 C. J. 630, note 98; Koetting v. State, 60 N. W. 822; Officer v. Officer (Ia.), 94 N. W. 947; Cathin v. Savings Bank, 7 Conn. 487; Mutual Acc. Assn. v. Javobs (Ill.), 31 N. E. 414, 16 L. R. A. 516, 11 C. J. 77; Murphy v. Bank, 130 Cal. 542, 62 Pac. 1059; First National Bank v. Greenville National Bank (Tex.), 19 S. W. 334; Farren v. Farmers State Bank (Nebr.), 163 N. W. 318.

ANDERSON, P. J. Some doubt has been expressed as to the jurisdiction of this court in this original proceeding. As to this we do not, at this time, express an opinion either way, but leave the matter open for subsequent determination.

This is an original proceeding in this court in which plaintiff seeks an alternative writ of mandamus against the defendants commanding the defendant John Hirning, as superintendent of banks, to approve and allow, as preferred claims payable out of the guaranty fund, the amount due upon three certificates of deposit of $200, $50, and $50, respectively. The certificates do not vary except as to the amount of each in dollars, and the number of the issue of the bonds. So far as the same is material, they are in the following form:

"Certificate of Deposit Not Subject to Check.
"No. 5831.                              Canova, S. D., Dec. 9, 1920.
"This certifies that W. B. Spry has deposited with the People's State Bank of Canova, $200, payable to the order of himself in 5th Liberty Bonds on the return of this certificate properly indorsed. Interest from December 15, 1920. With interest at the rate of 4¾% per annum if left 6 or 12 months, for the time specified only.                    Lewis Poltratz, A. Cashier."

It is stipulated that December 9, 1920, plaintiff Spry called at the People's State Bank of Canova; had a conversation with Wick, president of the bank; that it was suggested by Wick to plaintiff that he had in his safety deposit box in said bank some Liberty Bonds and that he (Wick) did not consider such bonds safe while being kept in that place; that the bank was issuing certificates for Liberty Bonds, and sending the bonds to a bank in Minneapolis for safe-keeping. He suggested to plaintiff that he exchange his Liberty Bonds for such certificates to be issued by

the bank, and that by so doing plaintiff could and would receive the bonds back, or "their equivalent." That thereupon plaintiff delivered to the bank three Liberty Bonds as aforesaid. It appears that the bonds received by the bank were by it converted into cash and used by the bank. October 26, 1921, the bank was closed, and has ever since been in the charge of the defendant John Hirning, as superintendent of banks, for the purposes of liquidation. It appears that on December 9, 1920, the fifth issue bonds were worth $95.40, second issue $85.30, third issue $88. It further appears that on October 26, 1921, the fifth issue was worth $99.40, second issue $92.40, third issue $94.86.

[1, 2] It is the contention of plaintiff that the deposit of the bonds constituted a special deposit, and that by reason thereof it comes within the provisions of the Depositors' Guaranty Act of this state; that hence the defendant Hirning, as superintendent of banks, should be commanded to approve and allow, as a preferred claim payable out of the guaranty fund, the amount due on the three certificates aforesaid. It will be observed that in the certificates it is not provided that the identical bonds turned over to the bank be returned to the depositor, but that bonds of the designated issue should be returned to plaintiff upon return of the certificates. From the stipulation of facts it appears that the bank did not bind itself to a return of the identical bonds delivered by plaintiff to the bank, but that it does provide that, upon the surrender of the certificates, the bank will return to plaintiff the bonds "or the equivalent." To construe the words "or equivalent" as permitting a return in money would amount to a contradiction of the terms of the instrument by parol evidence, which is not permissible. The only proper construction of the words "or equivalent," in view of the writing, is that the very bonds deposited should be returned, or bonds of like issue. We believe that under the stipulation of facts it is clear that the transaction amounted to nothing more than a bailment. The bonds were delivered to the bank for a specific purpose, viz., to be deposited by the receiving bank for safe-keeping in a Minneapolis bank to be selected by the bailee, the Canova Bank. The conversion of these bonds into cash by the bank, and the appropriation of the proceeds to its own use, in no sense constituted the deposit of such funds by the owner of the bonds. No such transaction was

contemplated by the parties. It is conceded that not a dollar of money was ever deposited in the bank by plaintiff. The transmission of the bond to Minneapolis by the bank may have been a convenient service for plaintiff but it constituted no part of the banking business contemplated by the bank guaranty law. It may be possible that a deposit of these with the Canova Bank for safe-keeping by that bank and a conversion thereof by the bank could be construed as a special deposit within the meaning of that law, but that was not the transaction in this case. The bonds were never deposited with the bank for safe-keeping; they were intrusted to it merely for the purpose of transmission to another bank for safe-keeping.

From the foregoing we think it clearly appears that there was no understanding to the effect that the identical bonds intrusted to the bank, and for which the certificates were issued, should be returned to the plaintiff. Unless there was such an agreement, there would not, under the law, be what is known as a special deposit.

Koetting v. State, 88 Wis. 502, 60 N. W. 822:

"A special deposit is where the whole contract is that the thing shall be 'safely kept,' and the identical thing returned to the depositor."

Bank v. Dean, 9 Okl. 626, 60 Pac. 226:

"A special deposit is one in which the depositor is entitled to the return of the identical thing deposited, and the title remains in the depositor."

Association v. Jacobs, 141 Ill. 261, 31 N. E. 414, 16 L. R. A. 516, 33 Am. St. Rep 302:

"There is a wide difference between a special deposit and a general deposit, as these terms are understood, not only by bankers, but by the public, who are transacting business daily with banks. Where money of any description is deposited in the bank, and the identical gold or silver or bank bills which were deposited are to be returned to the depositor, and not the equivalent, the deposit will be special; while * * * a general deposit is 'a deposit which is to be returned to the depositor in kind.' "

In order to constitute a special deposit, it must clearly appear from the agreement of the parties that a return in kind was contemplated.

Taking into consideration the entire record in this case, we think it clearly apparent that the contract shown did not contemplate a return in kind, and hence did not constitute a special deposit.

The application for the writ should be and is denied.

Note—Reported in 191 N. W. 833. See American Key-Numbered Digest, (1) Banks and Banking, Key-No. 15, Bailments, 6 C. J. Sec. 3; (2) Banks and Banking, Key-No. 153, 7 C. J. 306.

As to whether a deposit in bank is special so that the title remains in the depositor, see note 16 L. R. A. 516; 39 L. R. A. (N. S.) 847 and L. R. A. 1918A, 65.

On bailment as distinguished from special deposit within rule that national bank may receive special deposits, see note L. R. A. 1918A, 75.