**NORRIS v. CAMP, City Treasurer.**

**No. 2851.**

Circuit Court of Appeals, Tenth Circuit.

July 24, 1944.

Rehearing Denied Sept. 8, 1944.

A. W. Trice, of Ada, Okl. (Orel Busby and L. H. Harrell, both of Ada, Okl., on the briefs), for appellant.

W. E. Utterback, of Durant, Okl. (C. H. Baskin, of Holdenville, Okl., on the briefs), for appellee.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

PHILLIPS, Circuit Judge.

The Town, now City, of Wetumka, Oklahoma,[1] issued its waterworks extension bonds numbered one to four, inclusive, dated October 22, 1913, due October 22, 1938, each in the principal sum of $1,000 and payable to bearer. Such bonds provided for interest at the rate of six per cent per annum from date, evidenced by interest coupons attached thereto.

In 1937, the city entered into an agreement with R. J. Edwards, Inc.,[2] bond dealers of Oklahoma City, Oklahoma, whereby Edwards undertook to carry out a proceeding for the composition of the city's indebtedness under the provisions of Ch. 9, Title 11 U.S.C.A. Edwards assembled the information necessary to be set forth in the petition and employed attorneys to carry on the proceeding. Edwards believed that the waterworks bonds were an outstanding indebtedness of the city. The petition was filed September 28, 1937. It set forth the outstanding indebtedness of the city and included therein such waterworks bonds. On September 28, 1937, the lower court entered an order approving the petition and directing the city to file a schedule showing the amount of its outstanding bonded indebtedness. On November 2, 1937, the city filed such schedule, which included the waterworks bonds. On December 22, 1937, the lower court filed findings of fact and conclusions of law. It found that the city's outstanding bonded indebtedness was $210,395.25, which amount included $4,000 principal of the waterworks bonds and $1,440 accrued interest thereon. On the same day, it entered an order which approved and confirmed the plan, and adjudged that such outstanding bonded indebtedness, with interest, should be funded by the issuance of optional funding bonds on a par-for-par basis. It ordered that the exchange of the funded bonds for outstanding bonds should be made by a creditors' committee within a period of 90 days after the optional funding bonds should become incontestable under the laws of the State of Oklahoma, and that if any of such funding bonds should not be exchanged within such period, then the balance of such funding bonds should be delivered to the treasurer of the city, who should exchange them upon demand for the indebtedness funded, upon surrender of such indebtedness to him. On April 11, 1938, the lower court entered a final judgment in which it adjudged that the city was discharged from all debts and liabilities embraced in the plan and that the plan was binding upon all creditors of the city holding bonded indebtedness embraced in the plan.

On December 31, 1928, the First National Bank of Wetumka[3] assigned and transferred all its assets to the National Bank of Commerce of Wetumka.[4] On February 1, 1932, the National Bank transferred all its assets to the Exchange Bank of Commerce of Wetumka.[5] On October 14, 1932, the Exchange Bank pledged all its assets to secure a note for $271,569.78, payable to the Bank of Commerce of Wetumka.[6] By virtue of the sale of the assets so pledged, the Bank of Commerce became the owner thereof on March 14, 1939. On March 25, 1939, the Bank of Commerce assigned and transferred all the assets acquired from the Exchange Bank to John C. Norris, for himself, and as trustee for Frank C. Norris and B. E. Brazelton. The waterworks bonds were not referred to or described in any of such pledges, sales, or transfers.

John C. Norris, Frank C. Norris, and B. E. Brazelton are the principal shareholders of the Bank of Commerce, final successor of the other banks above mentioned. Brazelton is the chief managing officer of the Bank of Commerce. After the maturity of the waterworks bonds, a locksmith, at the direction of Brazelton, opened a locked safe-deposit box, labeled "Banks," which had been part of the equipment of the First National and its successor banks and which had been transferred to Norris. On opening the box an envelop was discovered therein bearing the address "First National Bank, Wetumka, Oklahoma." The envelop indicated that it had been sent to the First National by the Treasurer of the State of Oklahoma. Enclosed in the envelop were the waterworks bonds, the interest coupons attached thereto, a receipt dated June 7, 1915, purporting to be issued by the State Treasurer for

---

[1] Hereinafter called the city.
[2] Hereinafter called Edwards.
[3] Hereinafter called the First National.
[4] Hereinafter called the National Bank.

[5] Hereinafter called the Exchange Bank.
[6] Hereinafter called the Bank of Commerce.

items deposited with him to secure the deposit of public funds and describing such bonds, and a transcript of the proceedings for the issuance of such bonds. Interest coupons numbered 1 to 18, inclusive, had been canceled. Prior to the time it was opened the safe-deposit box had been locked at all times while in possession of the Bank of Commerce. The bonds were delivered to John C. Norris and are now in his possession.

The evidence failed to disclose that the waterworks bonds were ever carried as an asset of any of the banks above mentioned. The State Banking Department examined the Exchange Bank on May 3, 1933, November 18, 1933, and May 5, 1934. Such bonds were not listed as assets of the Exchange Bank in any of such examinations.

Annual levies were made by the city to pay the interest on such bonds and to provide a sinking fund for their retirement for the years 1913 to 1931, inclusive, except for five years during such period, and for the years 1932 to 1937, inclusive. None of the interest coupons were ever presented for payment.

The records of the city fail to show that the waterworks bonds were sold or that the city received any money for such bonds. The minutes of the proceedings of the City Council of May 22, 1921, disclose that W. A. Garen, a councilman of the city, was appointed to locate such bonds; that he reported that he was unable to locate them, and that when last seen they were in the First National in the custody of C. E. Jarrett, former city treasurer and an active officer of such bank. The minutes of the proceedings of the City Council of May 11, 1922, disclose that Garen reported that he had found the waterworks bonds in the First National and had turned them over to S. M. Puryear, the then city treasurer. On October 14, 1922, P. E. Schaub, a certified public accountant, who had made an audit of the books and records of the city, submitted as a part of his report a statement signed by J. C. Puryear, cashier of the First National, to the effect that such bonds were then being held by the First National for safekeeping for the city.

In the latter part of 1942, Brazelton made a demand on the city treasurer for the exchange of the waterworks bonds for funding bonds. The city treasurer refused to make the exchange. Norris then filed an application in the composition proceeding praying for an order on the city treasurer to show cause why an attachment should not issue against him for contempt for attempting to disobey the court's order of December 22, 1937. The city treasurer answered and set up that the waterworks bonds had never been sold, that the city retained title thereto, that the bonds were deposited for safekeeping with the National Bank, and that a receipt had been delivered to the treasurer of the Town of Wetumka for such bonds. He attached copy of the receipt to his answer. He prayed in behalf of himself and the city that such waterworks bonds be canceled and declared void. Norris filed a reply in which he set up that the order of December 22, 1937, had finally and conclusively adjudged that the bonds were an outstanding and valid indebtedness of the city, and set up such order and the final judgment in the composition proceeding as a bar to the defense pleaded by the city treasurer, and further set up that the time for modifying such order and final judgment under Rule 60 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, had expired.

The trial court found the facts substantially as above stated, concluded that Norris was not the owner of such waterworks bonds, and that such bonds were owned by the city and should be canceled. It entered a judgment adjudging that such bonds should be delivered to the city treasurer of the City of Wetumka, and that the same should be canceled, and that the funding bonds which were to be exchanged for such bonds should be canceled and not issued in accordance with the order of December 22, 1937. Norris has appealed.

█ Property voluntarily laid down is not in legal contemplation lost. The right of possession as against all except the true owner is in the owner or occupant of the premises where it is discovered, since he has custody of the property, and owes a duty to the owner as a gratuitous bailee, with respect thereto.[7]

█ Proof of the possession of personal property is prima facie evidence of

[7] Silcott v. Louisville Trust Co., 205 Ky. 234, 265 S.W. 612, 613, 614, 43 A.L.R. 28; Foster v. Fidelity Safe Deposit Co., 264 Mo. 89, 174 S.W. 376, 377–379, L.R. A.1916A. 655. Ann.Cas.1917D, 798; Kuykendall v. Fisher, 61 W.Va. 87, 56 S.E. 48, 50–54, 8 L.R.A.,N.S., 94, 11 Ann.Cas. 700.

title. It raises a presumption of ownership which may be rebutted or overcome by evidence of ownership in another. Hence, proof of possession of the bonds by Norris made out a prima facie case of ownership in him.[8] Neither Norris nor any of the banks paid any value for the bonds and they were discovered by Brazelton and came into the possession of Norris after maturity. The evidence adduced justified the finding that the bonds had never been sold by the city and that they had been placed in the safe-deposit box, where they were found, by the city treasurer for safekeeping by the First National. The deposit of the bonds and the issuance of the receipt created a special deposit[9] and the First National and its successors became gratuitous bailees of such bonds as against the city, the true owner.[10] Norris obtained the bonds from the Bank of Commerce, the gratuitous bailee thereof, and occupied no better position than the Bank of Commerce with respect to such bonds.

But the order of December 22, 1937, and the final judgment in the composition proceeding stood in the way of the relief which the city treasurer sought in behalf of himself and the city and such relief could not be granted until the order and final judgment in the composition proceeding had been modified.

Prior to the adoption of the Rules of Civil Procedure for the District Courts of the United States, a court of equity had the power to vacate, alter, or amend its decree during the term at which the decree was entered.[11]

While a bankruptcy court applies the doctrines of equity, the fact that a bankruptcy court has no terms, and sits continuously, renders inapplicable the rules with respect to the want of power in a court of equity to vacate a decree after the term at which it was entered has ended.

Prior to the effective date[12] of General Order No. 37, 11 U.S.C.A. following section 53, a court in bankruptcy had the power, for good reason, to revise its judgments upon seasonable application and before rights had vested on the faith of its action.[13] But General Order No. 37 made the Rules of Civil Procedure applicable to proceedings in bankruptcy. Rule 60(b) of the Rules of Civil Procedure, in part, provides:

"On motion the court, upon such terms as are just, may relieve a party or his legal representative from a judgment, order, or proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect. The motion shall be made within a reasonable time, but in no case exceeding six months after such judgment, order, or proceeding was taken. * * * This rule does not limit the power of a court (1) to entertain an action to relieve a party from a judgment, order, or proceeding, * * *."

Since the six months' period had expired before the answer was filed by the city treasurer, we think the lower court had no power to modify the order and final judgment in the composition proceeding under the provisions of Rule 60. This rule, however, does not limit the power of the court to entertain an action to relieve a party from a judgment, order, or proceeding. But, after the expiration of six months, the party must apply by bill of review, now designated a civil action, to obtain relief from a judgment which itself is final so far as any further steps in the original action are concerned.[14]

[8] Chicago, R. I. & P. Ry. Co. v. Newburn, 27 Okl. 9, 110 P. 1065, 1066, 30 L.R.A.,N.S., 432; Dalton v. Bilbo, 126 Okl. 139, 258 P. 274, 276; Kova Pipe Line Co. v. Liles, 186 Okl. 212, 97 P.2d 43. See, also, Note, 101 A.L.R. 832.

[9] Fogg v. Tyler, 109 Me. 109, 82 A. 1008, 1010, 39 L.R.A.,N.S., 847, Ann.Cas.1913E, 41; Richards v. Fulton, 6 Cir., 75 F.2d 853, 854; Keyes v. Paducah & I. R. Co., 6 Cir., 61 F.2d 611, 612, 86 A.L.R. 203; Bank of Blackwell v. Dean, 9 Okl. 626, 60 P. 226, 228.

[10] Richards v. Fulton, 6 Cir., 75 F.2d 853, 854; Mellon Nat. Bank v. Citizens Bank & Trust Co., 8 Cir., 88 F.2d 128, 132; Bank of Blackwell v. Dean, 9 Okl. 626, 60 P. 226, 228.

[11] Wayne United Gas Co. v. Owens-Illinois Gas Co., 300 U.S. 131, 136, 57 S.Ct. 382, 81 L.Ed. 557.

[12] February 13, 1939.

[13] Wayne United Gas Co. v. Owens-Illinois Gas Co., 300 U.S. 131, 137, 57 S.Ct. 382, 81 L.Ed. 557; Conro v. Crane, 94 U.S. 441, 443, 24 L.Ed. 145; Sandusky v. First Nat. Bank of Indianapolis, 90 U.S. 289, 293, 23 Wall. 289, 23 L.Ed. 155; Mulligan v. Federal Land Bank of Omaha, 8 Cir., 129 F.2d 438, 440.

[14] See Dissenting Opinion of Mr. Justice Roberts in Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 64 S.Ct. 997 (filed May 15, 1944); Hagerott v. Adams, 8 Cir., 61 F.2d 35.

We conclude, therefore, that the city should have asked the trial court to stay the contempt proceeding instituted by Norris and should have filed an action setting up the facts and asking the bankruptcy court to modify the order and final judgment entered in the composition proceeding.

The judgment is reversed, and the cause is remanded for further proceedings in accordance with this opinion.