Common Pleas Court of Hocking County.

BOARD OF COUNTY COMMISSIONERS OF HOCKING COUNTY, OHIO, V. CONSOLIDATED INDEMNITY AND INSURANCE CO.*

Decided November 28, 1931.

*C. Wood Bowen*, prosecuting attorney and *Forest E. Weinrich*, for plaintiff.

*Charles Druggan*, for defendant.

WHITCRAFT, J.

A jury having been waived by the parties, this cause was submitted to the court on the pleadings, stipulations of fact, exhibits and evidence; and there being no dispute upon the essential and material facts, no extended recitation thereof would appear to be required. We shall be content in making reference only to such matters as seem to be germane to the discussion which shall thereafter appear.

The plaintiff seeks to recover upon a bond executed by the defendant as surety of the First-Rempel National Bank of Logan, Ohio, which was designated by the plaintiff board on January 14, 1931, as an "active" and "inactive"

---

*Judgment affirmed by Court of Appeals, April 28, 1932, motion to certify overruled and motion for rehearing denied.

depositary of certain of the public funds of said Hocking county, pursuant to the provisions of Section 2715, General Code *et seq.*, generally known as the county depositary act.

The liability of the defendant is conceded and the sole question submitted is the extent of that liability.

A determination of the extent of defendant's liability requires an interpretation of one of the provisions of the bond, which is in the following language: "promptly pay over on proper legal order such cash and cash items as shall have been actually and regularly deposited with it during the term of this bond *in an account subject to check.*"

It is the claim of the defendant that the phrase "account subject to check" can only have reference to the "active" account in said bank, which amounted on April 20, 1931, (the date when the bank closed) to $2,000.00.

A critical examination of the legislation authorizing and requiring the designation of a depositary for the public money of the county is most instructive and reflects much light upon our present inquiry.

The original act passed May 21, 1894, (91 O. L., 403) set up the machinery for advertising for bids or inviting sealed proposals from qualified state and national banks, situate in the county, for the money of the county, and prescribed the manner in which the award should be made.

By this act no minimum rate of interest was fixed, but the award was to be made to the bank that offered the highest rate of interest for the funds. No award was binding on the county and no funds could be lawfully deposited in any such depositary bank until the hypothecation of the bonds required under Section 7 of the act, or until a good and sufficient undertaking was executed by the bank payable to the county and accepted by the commissioners.

This original act contained thirteen sections, and Section 8 thereof provided, among other things: "The treasurer shall, upon the receipt of a written notice from the commissioners, stating that a depositary has been selected in pursuance of the provisions of this act, and naming the bank or banks selected as such depositary or depositaries, deposit, as directed by the commissioners, to the credit of the county, all money in his possession, except such as

may be necessary to meet current demands, in such bank or banks, * * * and such money shall be payable only on the check of the treasurer."

It will be observed that by the act of May 21, 1894, no depositary was authorized for "active" funds, and the language, "and such money shall be payable only on the check of the treasurer," could have reference to none other than the "inactive" account.

At the next session of the General Assembly the depositary act was rewritten and all of the thirteen sections were amended as appears in 92 O. L., 353. Section 8 of the amended act so far as pertinent to our present inquiry was not amended and the language herein before quoted appears *verbatim* in the act as amended.

By the act of April 2, 1906, (98 O. L., 274) the first nine sections of the depositary law were amended. Section 8, so far as pertinent, then read as follows:

"The treasurer shall, upon the receipt of a written notice from the commissioners, stating that a depositary or depositaries has been selected in pursuance of the provisions of this act, and naming the bank or banks or trust companies selected as such depositary or depositaries, deposit as directed by the commissioners to the credit of the county, all money in his possession, except such as may be necessary to meet current demands, in such bank or banks or trust companies, etc., * * * and such money shall be payable only on the check of the treasurer."

The only change appearing from this amendment was that "trust companies" were added to the class of financial institutions which might be made a depositary of public funds.

On May 10, 1910, Section 8 of the act of April 2, 1906, was amended as appears in 101 O. L., 353, and under the new codification act was designated as Section 2736.

No essential change was made in Section 8 of the act, now Section 2736. It provided only for inactive depositaries, and the same language, "such money shall be payable only on the check of the treasurer," was carried into the amended act.

On March 30, 1911, Section 2736 was amended as appears in 102 O. L., 59. By this act Section 2715 General

Code was amended and Section 2715-1, General Code, was enacted, and for the first time in Ohio depositaries for the "active" funds of the county were authorized.

Accordingly, Section 2736, General Code, was amended and, as amended, read as follows:

"Upon the receipt by the county treasurer of a written notice from the commissioners that a depositary, or depositaries, have been selected in pursuance of law, and naming the bank or banks or trust companies so selected, such treasurer shall deposit in such bank or banks or trust companies, as directed by the commissioners, and designated as inactive depositaries, to the credit of the county all money in his possession, except such amount as is necessary to meet current demands, which shall be deposited by such treasurer in the active depositary or depositaries * * *. Such money shall be payable only on the check of the treasurer."

Section 2736, General Code, was last amended to read in its present form on April 17, 1913, (103 O. L., 562.)

No substantial change was made in the language and the statement "such money shall be payable only on the check of the treasurer" appears in the amended act.

It will be observed that prior to the amendment of Section 2736, General Code, on March 30, 1911, (102 O. L., 60) there was no provision for the deposit of the "active" funds of the county by the treasurer in a depositary or depositaries. Prior to this amendment the law did not contemplate the deposit of the "active" funds, or authorize the designation of an active depositary. From 1894 to 1911 the "active" funds in the hands of the treasurer were expressly exempted from the provisions of the depositary law. In every instance the command of the statute was:

"The treasurer shall * * * deposit, as directed by the commissioners, to the credit of the county all moneys in his possession *except such as may be necessary to meet current demands,* in such bank or banks, etc."

It is manifest, therefore, that prior to the amendment of March 30, 1911, there was but one type of depositary, and that the inactive one. The "active" account was under the control of the treasurer and was used by him to meet current demands. It was not disbursed by check.

Therefore, the conclusion is inescapable that the language, "and such money shall be payable only on the check of the treasurer," did not and could not have reference to any other than the "inactive" account, for there was no other. This statement, "any such money shall be payable only on the check of the treasurer," appeared in the original depositary act and in every amendment thereof. It is a part of the present statute. The legislative intent is clear. It stamps with finality the conclusion that the funds in the "inactive" account are subject to check.

It is true that by the amendment of Section 2715, General Code, and the enactment of the new Section 2715-1, General Code, a new type or class of depositary came into being; and the "active" funds of the account, theretofore exclusively under the control of the treasurer and used in meeting current demands, were required by the new law to be deposited in an "active" account and made "subject to draft for the purpose of meeting the current expenses of the county."

It was found that even the "active" account was capable of earning a return for the benefit of the county. Creation of another type of depositary and the requiring of the deposit of the "active" funds of the county at interest manifestly did not take away from the treasurer, or in any wise circumscribe or limit his power to disburse the "inactive" account by check. The language, "such money shall be payable only on the check of the treasurer," applies with equal force to the "inactive" and "active" accounts. The legislative intent is manifest, and to give this plain and unequivocal language any other interpretation would do violence to every recognized rule of construction.

The obvious purpose of the enactment of the depositary law was to correct abuses which had theretofore existed in the administration of public funds and at the same time add thereto a reasonable return by way of interest. Its enactment was in the interest of and for the public good, and all the legislation on the subject must be construed in the light of this salutary purpose.

As already pointed out, the law originally provided only for the deposit of the "inactive" funds. As the legislation developed, the minimum rate of interest on the "inactive" account was fixed at one per cent and later in-

creased to two per cent. Subsequently, Section 2715, General Code, was amended and Section 2715-1, General Code was enacted, which authorized and required the deposit of the "active" funds in "active" depositaries; and it was provided in Section 2715-1, General Code, that "the deposits in active depositaries shall at all times be subject to draft, for the purpose of meeting current expenses of the county. The deposits in inactive depositaries shall remain until such time as the county treasurer is obliged to withdraw a portion or all of the same and place it in the active depositary or depositaries for current use."

Now the minimum rate of interest return on the "inactive" account, as already stated, is two per cent, while the rate on the "active" account is one per cent. The public interest required the deposit of the largest amount practicable and consistent with good business practice in the "inactive" account, and that there should be no withdrawal from the "inactive" account until the "active" account was exhausted and the current needs required a portion or all of the "inactive" funds.

Section 2715-1, General Code does not undertake to distinguish the money in the "inactive" account from the money in the "active" account. It is all public money—derived from the same source, has equal purchasing power, will pay the same kind of obligations against the county and to the same extent. The public interest is advanced by withdrawing or distributing first, that account which produces the minimum return; and a reasonable interpretation of the provisions of Section 2715-1, General Code, construed in the light of the manifest intent of the General Assembly, forces the conclusion that this section only determines the order in which the "active" and "inactive" funds are to be disbursed, without qualifying or limiting the effect of the provision of Section 2736, "that such money shall be payable only on the check of the treasurer."

It is stated in defendant's brief that "the bond was a printed form used by that company generally." It would appear, therefore, that the rule of interpretation announced by the Supreme Court in State v. Worthington, 7 O., Pt. 1, page 171, and Gardner v. Woodyear, 1 Ohio, 170, should be applied.

It is the further claim of counsel for the defendant that its liability is limited by reason of a provision of the bond designated as condition precedent No. 3: "The surety shall be liable hereunder only for such proportion of the total loss sustained as the penalty of this bond shall bear to the aggregate amount of all bonds and securities, whether collectable or not, furnished to the obligee, and in no event shall the surety be liable hereunder in any sum in excess of the penalty of this bond."

It is conceded that defendant's bond is a statutory one, executed pursuant to the provisions of Sections 2723 and 2726, General Code.

In the original act of May 21, 1894, (91 O. L., 403) the matter of undertaking was determined by Section 4 of said act. It fixed the amount, the minimum number of resident freeholders required as sureties and further provided that it should be "conditioned for receipt, safe keeping and paying over * * * of all money which may come into its custody by virtue of this act, and under and by virtue of its proposal and the award of the commissioners together with interest thereon at the rate specified in the proposal, and the undertaking shall be further conditioned for the faithful performance by the bank of all the duties imposed by the act upon the depositary of the money of the county."

Section 4 of the act of May 24, 1894, was amended by the General Assembly on April 27, 1896, (Vol. 92 O. L., 353) to authorize the acceptance of a fidelity and indemnity insurance company as surety; but the conditions of the bond of the depositary bank were left unchanged.

By the amendment of April 2, 1906, (98 O. L., 274) trust companies were accorded depositary privileges, but no change was otherwise made in the terms and conditions of the depositary bond.

On May 9, 1908, Section 4 of the depositary act was amended and supplemented (99 O. L., 465). It provided then for the first time a form of undertaking, but the conditions thereof and theretofore appearing in all the legislation on the subject remained unchanged. Section 4 then became Sections 2723, 2724, 2725 and 2726, General Code.

Up to this time the law did not authorize the designation of active depositaries. Section 2723 has not been since amended, but the act of March 21, 1917, Sections 2724, 2725 and 2726, General Code, were amended to read in their present form.

It appears, therefore, that in the development of the depositary law, while numerous changes have been made in many of its provisions, the conditions of the undertaking required by statute have always been as they were originally enacted.

The Legislature, in its wisdom, did not find it necessary or desirable to alter the conditions of the bond, notwithstanding the fact that it created and brought into being the authority to designate a new type of depositary, viz., the active one.

Thus, it appears that at all times since the passage of the original county depositary act, while the law authorized only in the first instance the designation of depositaries for the "inactive" account but subsequently authorized the designation of "active" depositaries, nevertheless the conditions of the bond required by statute of all depositaries were and are for "the receipt, safe keeping and paying over of all money with interest * * * which may come under its custody under and by virtue of this chapter (Section 2715, General Code, *et seq.*) and for the faithful performance by the depositary of all the duties imposed by law."

Finally, a form of bond was prescribed by statute (Section 2736, General Code), the provisions thereof with which we are concerned being stated as follows:

"We obligate ourselves * * * for the receipt, safe keeping and repayment of deposits made, or to be made by the county treasurer * * *, with interest, * * * and the performance of all duties required by law."

The bond under consideration was given pursuant to the provisions of the depositary law, and the liability of the defendant must be determined not only from the language of the undertaking, but the spirit of the law which gave it life must be read into it as well. It contains all the provisions required by statute. However, there appears therein other conditions, among them Section 3 of the

conditions precedent to the right of recovery, which are not required as a part of the bond.

The statute, Section 2736, General Code, provides in express terms that such super-added matter may be treated as surplusage. In cases like the one at bar and under circumstances presented by the facts in this case the almost universal rule.is that the statute must be read into the bond and the super-added stipulations must be disregarded.

In 9 C. J., page 34, the rule is stated as follows:

"The law at the time of the execution of a bond is a part of it; if it gives to the bond a certain legal effect it is as much a part of the bond as if in terms incorporated therein. Where a bond is given under the authority of a statute in force when it is executed, in the absence of anything appearing to show a different intention, it will be presumed that the intention of the parties was to execute such a bond as the law required, and such statute constitutes a part of the bond as if incorporated in it, and the bond must be construed in connection with the statute and the construction given to the statute by the courts. Such a bond must be given the effect which in reason must be intended by the statute. Whatever is included in the bond, and is not required by the law, must be read out of it, and whatever is not expressed, and ought to have been incorporated, must be read as if inserted into it."

In 18 C. J., page 586, there appears under the designation, "Bond of Depositaries," the following statement:

"Statutory provisions relating to depositaries should be read in connection with the bond, especially where there is express reference thereto. Additional conditions to those provided for by the statute which tend to limit the liability of the surety will be regarded as surplusage."

The same principle is stated in 5 O. J., page 654, as follows:

"Where the Legislature deems it necessary to require the execution of a bond and specifies the conditions to be annexed to the bond, it is impossible to correctly settle the rights of the parties originating in or growing out of the bond without looking to the whole law and ascertaining specifically the intention of the law making power. The provisions of the statute relating thereto are impliedly read into the bond."

In *Village of Wyoming* v. *Trust Co.*, 9 App., page 225, the court held:

"A bond securing deposits made by a city or village in a designated depositary is a statutory bond into which the provisions of the statute relating thereto must be read; and the surety will be held to have contracted with reference to such statutory provisions."

The Supreme Court of Oklahoma in *Western Casualty and Guaranty Insurance Company* v. *Commissioners*, 159 Pac., 655, announced the same principle in the following language:

"Where a depositary bond executed pursuant to the provisions of said Section 1540, contains the exact conditions imposed by the statute and, in addition, other provisions which are not provided by the statute, tending to limit or evade liability, the bond will be upheld as the conditions imposed by statute, and the other provisions will be treated as surplusage."

We think that *Davis* v. *West Louisiana Bank*, 99 So., 210, is directly in point. It is there held:

"2. A bond given by a depositary of the funds of a parish under act No. 205 of 1912 and its amendments is a statutory bond, and the statute must be read into the bond and super added stipulations must be disregarded."
"3. A parish police jury has no authority under act 205 of 1912, relating to depositaries' bonds, to agree to any limitation to the right of the parish to recover the full amount of the bond in event of loss of deposits, to secure which the bond is given."

It is stated in the opinion—

"The bond was given by the defendant bank in pursuance of the requirements of the fiscal agency laws of the state * * *, it is, therefore, the statutory bond, which was the only kind of bond the police jury was authorized to accept. The statute must be read into the bond. Super added stipulations must be disregarded. Necessary obligations which have been omitted must be supplied."

And it is further stated—

"Condition 2 of the bond which attempts to restrict the liability of the defendant surety to such proportion only of the penalty as said penalty bears to the total sum of

deposit must therefore be disregarded and said surety be held for the full amount of its suretyship contract."

The cases could be multiplied sustaining this principle, but the foregoing will suffice. It is not and can not be claimed that the bond is void for the reason that its terms are more comprehensive than the statute, for the contrary is established by the weight of authority. *State* v. *Findley,* 10 O., 51; *Place* v. *Taylor,* 22 O. S., 317; 4 R. C. L., pages 54 and 55.

Applying the rule above stated, the court is driven to the conclusion that condition precedent No. 3 of the bond under consideration is surplusage, must be disregarded and can not have the effect of restricting the liability of the defendant.

This construction does no violence to the rule announced by the court in the cases cited in the brief of counsel for the defendant. It is true that the liability of a surety is measured by his contract, and its construction does not depend upon the question of whether or not it was compensated, but there is woven into the warp and woof of the contract under consideration the spirit, intent and purpose of the law by the force of which it was taken, which must be considered in the interpretation of its provisions.

The case of *Royal Indemnity Co.* v. *Day, Melloch Co.,* 114 O. S., 58, is clearly distinguishable from the case at bar. In that case the statutory form of bond seemed to super add a condition not warranted by the statute authorizing the bond. The court held that the terms of the bond could not exceed the scope of the statute.

The bond in question does not undertake to do so. The depositary bank in this case had $66,500.00 of the money of the county. It was its duty to receive it, safely keep it and pay it over to the county treasurer with interest. That was the intent of the law and the reason for the bond. Its undertaking simply exacted the performance of all duties required by law.

Entertaining the view that as a matter of law the contract of the defendant surety covered both the "inactive" and "active" accounts, it follows that the testimony of the witnesses, A. F. White and Jacob A. Keller, is immaterial and irrelevant, and the objection to the introduction there-

of by the defendant is sustained and such testimony is stricken from the record.

The finding and judgment of the court is for the plaintiff and against the defendant in the sum of $10,000.00 and costs.