CHARLES N. PARKER AND FRED A. BISHOP v. CENTRAL BANK AND TRUST COMPANY OF ASHEVILLE, ET AL.

(Filed 17 February, 1932.)

**1. Banks and Banking C c—Definition of "deposit for a specific purpose."**

In order to constitute "a deposit for a specific purpose" as defined by law it is necessary that the parties intend at the time that the proceeds of the deposit shall remain segregated and not be used by the bank in its ordinary business or commingled with its general funds, that there be an agreement, express or implied, that the deposit shall not constitute a part of the general funds of the bank or be subject to its exclusive use or control, that the bank have notice or knowledge of the character of the deposit at the time it is made, and that the deposit must in fact swell the assets of the bank, and the mere tracing of the money into the common funds of the bank is not a sufficient identification or segregation of the deposit.

PARKER *v.* TRUST CO.

**2. Banks and Banking H d—Deposit in this case held to be for specific purpose and constituted a preferred claim against receiver.**

Where a sum is deposited in a bank under an agreement that the bank hold the funds and distribute them in accordance with an award to be made between the interested parties by arbitration, and the bank receives the deposit and gives a receipt therefor stating that it had received the amount deposited in escrow under the agreement and that it would pay the sum to the interested parties in accordance therewith, and the deposit is credited to the bank's "escrow agreement account" in its trust department, and the bank becomes insolvent: *Held*, the deposit was delivered to the bank under an agreement that it be applied to a particular purpose, and the bank had sufficient knowledge and notice of the trust character of the deposit and the purpose to which the deposit was to be applied, and the deposit was "a deposit for a specific purpose," entitling the claimants to a preferred claim therefor against the assets of the bank in the receiver's hands.

CIVIL ACTION, before *Stack, J.,* at November Term, 1931, of BUN-COMBE.

The cause was submitted upon an agreed statement of facts, which, in substance, are as follows: Prior to 23 January, 1928, the plaintiffs rendered certain services upon the Arcade Building in Asheville, belonging to the estate of E. W. Grove. A dispute arose with respect to such services and it was agreed that the division of the fund should be determined by arbitration. Thereafter the Grove estate paid by check the sum of $21,241.71. The check was endorsed by plaintiffs as follows: "Pay to the order of the Central Bank and Trust Company, for special deposit as an escrow, subject to the terms of the agreement between the undersigned payees, of date 23 January, 1928. Charles N. Parker, Fred A. Bishop." On the same day this check was deposited in the defendant, Central Bank and Trust Company, and said bank gave a receipt for said fund as follows: "We have had deposited with us escrow agreement, dated 23 January, 1928, between Fred A. Bishop, of Richmond, Virginia, and Charles N. Parker, of Asheville, N. C. We are also in receipt of check dated 26 August, 1929, for $21,241.71, payable to Fred A. Bishop and Charles N. Parker. This check is drawn by estate of E. W. Grove by St. Louis Union Trust Company of St. Louis, Mo. These funds will be paid out by us in accordance with the terms of the escrow agreement. The escrow agreement referred to was the agreement between Bishop and Parker that the division of said fund between them should be determined by arbitration. The last paragraph of the escrow agreement was as follows: "It is further agreed that upon settlement with said Grove estate by private treaty or upon rendition of the final judgment against said Grove estate, that the attorneys of the parties hereto shall have the right to collect and receive the moneys

found to be due to the parties hereto, or either or both of them, in accordance with the terms of said settlement or judgment, and the same forthwith to deposit as an escrow in the Central Bank and Trust Company of Asheville, N. C., subject thereafter to be disbursed to the parties respectively, in accordance with the terms of the award of the arbitrators, as hereinbefore provided."

The sum in controversy was received by the trust department of defendant and deposited in the commercial department of said bank and entered on the books of the bank and credited to the account known as the "escrow agreement account." Thereafter, on 10 November, 1930, the defendant suspended business and closed its doors.

Subsequently, on 12 December, 1930, the arbitrators, after hearing the evidence, awarded $1,401.67 of said fund to the plaintiff, Bishop, and $19,801.67 to the plaintiff, Parker. After the award was made the plaintiff made demand upon the liquidating agent of the defendant to deliver said fund in accordance with the terms of the deposit and escrow agreement. The defendant declined to deliver said fund upon the ground that the money had become intermingled with other funds of defendant, and that plaintiffs thereupon were merely unsecured creditors of the bank. The cause was heard and the trial judge entered a judgment, the pertinent portion of which is as follows: "It is, thereupon, ordered, adjudged and decreed that the claim of the plaintiffs be and the same is hereby allowed as a preferred claim against the assets of the Central Bank and Trust Company, and when final settlement is made by said defendant the said claim shall be allowed priority in payment over the claims of the common creditors and shall either be paid in full, as a preferred claim, or, in the event of an insufficient amount, to pay all of the preferred claims, then it shall share pro rata with the other preferred claims against the said Central Bank and Trust Company."

From the foregoing judgment the defendant appealed.

*Merrimon, Adams & Adams and Carter & Carter for plaintiffs.*
*Johnson, Smathers & Rollins for defendants.*

BROGDEN, J. The questions of law involved in the appeal may be stated as follows:

(1) Is the deposit which is the subject of the controversy "a deposit for a specific purpose" as contemplated and defined by law?

(2) Does such deposit entitle the owner or beneficiary thereof to a preferred claim upon the assets of an insolvent bank?

Bank deposits are classified by law as general deposits, special deposits, and deposits for a specific purpose. The definitions of such de-

posits are set forth in *Corporation Commission v. Trust Co.,* 193 N. C., 696, 138 S. E., 22. The Court says: "A deposit for a specific purpose is made when money or property is delivered to a bank to be applied to a designated object, or for a purpose which is particularly defined, as, for example, the payment by the bank of a specified debt. It is neither general nor wholly special. It partakes of the nature of a special deposit to the extent that the title remains in the depositor, and does not pass to the bank. The consequence is that the money, if not applied, or if misapplied, may be recovered as a trust deposit." The general principles governing such deposits have been discussed and applied in the following cases, to wit: *Bank v. Davis,* 114 N. C., 343, 19 S. E., 280; *Corporation Commission v. Trust Co.,* 193 N. C., 696, 138 S. E., 22; *Corporation Commission v. Trust Co.,* 194 N. C., 125, 138 S. E., 530; *Bank v. Corporation Commission,* 201 N. C., 381, 160 S. E., 360. The whole question is discussed with great clearness of detail by *Parker, Circuit J.,* in *Poission v. Williams; First National Bank of Ventura v. Williams; Marshburn v. Williams,* 15 Fed. (2d), pp. 582, *et seq.*

The foregoing decisions and others of like tenor establish certain ear-marks or indicia by which a deposit for a specific purpose or a trust deposit may be recognized and established. These indicia may be classified as follows: (1) The parties must intend at the time the deposit is made that the proceeds thereof shall remain segregated and not commingled with the general funds of the bank and used by it in accordance with the ordinary customs or usages of banking practice; (2) there must be an agreement, express or implied, that such deposit shall not constitute a part of the general funds of the bank and subject to its exclusive use and control in the ordinary course and prosecution of its business; (3) notice or knowledge of the trust character of the deposit must be disclosed or appear at the time the deposit is received by the bank; (4) the deposit must, in fact, swell or increase the assets of the bank; (5) the mere tracing of the money into the common funds of the bank is not a sufficient identification or segregation of the deposit.

Applying the pertinent principles of law to the facts disclosed by the record, it is manifest that the deposit involved in this case was delivered to the bank to be applied to a designated object or for a purpose particularly defined in the escrow agreement. This escrow agreement put the bank upon notice that the fund was to be held pending an arbitration proceeding and to be disbursed in accordance with the award. Indeed, the bank received the fund with sufficient knowledge of the trust character and quality of the deposit, upon express agreement that such fund was to be used exclusively for the designated purpose. Therefore, the

court is of the opinion that the fund was a trust deposit. Consequently, the law, as applied by decisions and textwriters impresses upon such fund a preferential quality. Hence, it is concluded that the judgment was correct.

Affirmed.