The parties waived a jury trial and the judge found the facts. These facts are substantially as follows: The Bank of Pender closed its doors on 6 January, 1932, and its assets were thereby vested in the Commissioner of Banks. Prior to 29 December, 1931, Fitzhugh Lee had on deposit in the savings department the sum of $3,714.26, and on said date he drew a check for said sum payable to his wife, Mrs. Fitzhugh Lee. Mrs. Lee thereupon requested the bank to issue to her a cashier's check for said sum of money and told the president of the bank "that she was withdrawing the money for the purpose of buying Liberty Bonds." Branch informed her that he would buy bonds for her, and on 30 December, 1931, he wrote a letter to Fitzhugh Lee requesting that he mail cashier's check to the bank. On 4 January, 1932, Mrs. Lee endorsed the cashier's check and Fitzhugh Lee took the same in person to Branch, president of the bank, and delivered said cashier's check to said president, properly endorsed by him, and at the same time Fitzhugh Lee delivered to the said C. C. Branch, president, the sum of $2,460 in currency. "He requested Branch to place $74.26 of said amount to his credit and to purchase for him $6,100 in Liberty Bonds with the balance. Said cashier's check was marked paid on 5 January, 1932, by said Bank of Pender, and thereupon C. C. Branch, president, directed Miss Maude Paddison, assistant cashier of said bank, to make a draft on the North Carolina Bank and Trust Company of Wilmington for $3,600, and another draft on the American Bank and Trust Company of Richmond for $2,500, both in favor of Frederick E. Nolting, of Richmond, Virginia, which said two drafts were accordingly drawn and forwarded to said Nolting by C. C. Branch, president of said Bank of Pender." Accompanying the draft was a letter directed to Nolting, requesting the purchase of $6,100 of Liberty Bonds. Fitzhugh Lee received $2,500 in *Page 144 
Liberty Bonds from Nolting and Company, purchased with the draft on the Richmond bank, "which cleared in due course, but the Bank of Pender closed its doors on 6 January, 1932, and the draft on the North Carolina Bank and Trust Company of Wilmington did not clear in the meantime, and was never paid." Said draft for $3,600 was held by Nolting and Company at the time the Bank of Pender closed its doors. "It is admitted that the Bank of Pender invoked the thirty-day clause on savings accounts prior to 29 December, 1931, but Fitzhugh Lee was not notified of said act on the part of said bank."
Branch, president of the bank, said that the currency and the cashier's check were delivered to him for the express purpose of paying for $6,100 worth of 4 1/4 Liberty Bonds.
Fitzhugh Lee contends upon the foregoing facts that he is entitled to a preference in the sum of $3,600. The trial judge declared in the final judgment: "Claimant held a cashier's check issued to him by the Bank of Pender. This was a mere acknowledgment on the part of the bank that it was indebted to him in the sum of $3,714.26. He directed the bank to cancel the check and purchase for him certain bonds. A draft was issued by the bank on the North Carolina Bank and Trust Company for $3,600, payable to Nolting and Company, which draft was never paid because of failure of the Bank of Pender. There was no deposit of money. The money was already in the bank, and by a process of bookkeeping the debt of the bank was shifted to Nolting and Company. There was no augmentation or swelling of the assets of the bank by this transaction. . . . Wherefore, it is adjudged that the claimant is not entitled to any preference, but that his claim must run the ordinary gamut of an unsecured debt, sharing in such dividends as may be declared from time to time."
From the foregoing judgment the claimant appealed.
If a depositor in a bank takes a cashier's check for his deposit, and thereafter surrenders the cashier's check, purchasing with the proceeds, a draft for the purchase price of Liberty Bonds, and the bank is closed before the draft is paid, does such transaction constitute a preference?
The claimant received Liberty Bonds for the cash which he deposited in the bank. Consequently, the only question to be determined is whether the transaction with the cashier's check and draft constitutes a preference. The question of law must be answered in the negative. The *Page 145 
transaction did not constitute a statutory preference as defined by C. S., 218 (c), as construed and interpreted in Morecock v. Hood, 202 N.C. 321, nor did it constitute a preference upon the trust fund theory declared inParker v. Trust Co., 202 N.C. 230. The trial judge correctly interpreted the law and the judgment is
Affirmed.