WILLIAM J. COCKE, JR., AND T. A. UZZELL, JR., TRUSTEE FOR THE MORT-
GAGE POOL ACCOUNT, v. GURNEY P. HOOD, COMMISSIONER OF
BANKS, EX. REL. CENTRAL BANK & TRUST COMPANY.

(Filed 19 September, 1934.)

Banking H e—Bank's consolidation of small trust accounts
*itute consolidated account a special deposit.

a number of small accounts due guardians, execu-
her fiduciaries into one account, denominated
it deposited in its commercial depart-
ount for its pro rata share of the
of the consolidated account
from other departments
ties thus purchased
cent of their face
uch small accounts
eposit for a special
trust ac-

counts and departments of the bank, evidenced by book transactions within the bank, swell its assets or put new money in the bank, and the trustee appointed by the court for the "Mortgage Pool Account" is not entitled to a preference in the bank's assets upon its insolvency and receivership.

**2. Same—**

The mere fact that a bank holds and dissipates trust funds does not establish a preference in favor of the beneficiaries upon the bank's insolvency.

**3. Same—Bank's purchase of securities from itself with trust deposits does not entitle depositors to preference for resulting loss.**

A bank consolidated a number of small accounts due guardians, executors, and other fiduciaries into one account, and purchased with the funds of the consolidated account notes and securities at their face value from other departments of the bank and from corporate affiliates. The securities thus purchased were worth at the time of the purchase only sixty per cent of their face value. The trustee appointed by the court for the beneficiaries of the consolidated account claimed a preference in the bank's assets upon its later insolvency and receivership for the loss resulting to the beneficiaries by the bank's dealings with itself upon the theory that the bank was trustee *ex maleficio*. *Held*, the trustee was not entitled to the allowance of his claim as a preference. The right of preference, or equity of priority, in an insolvent bank's assets and the right to follow funds and recover certain specific property under the theory of a trust created *ex maleficio* is pointed out by BROGDEN, J.

SCHENCK, J., took no part in the consideration or decision of this case.

CIVIL ACTION, before *Schenck, J.,* at January Term, 1934, of BUN-COMBE.

In the Trust Department of the Central Bank and Trust Company of Asheville there were approximately two hundred small accounts, representing small balances due guardians, executors, administrators and other fiduciaries. These funds were in the Trust Department Account in the Commercial Department and were not supported by any security or collateral. On or about 29 June, 1929, these small balances amounted to $155,940 in cash and the officers of the bank consolidated all of these sums into a separate trust account, designated as the "Mortgage Pool Account."

Thereupon a fractional certificate of investment was issued by the bank as trustee for the fractional part or portion that each guardian, administrator or other fiduciary account contributed to form the consolidated fund known as "Mortgage Pool Account." These certificates provided that "the securities constituting said Mortgage Pool Account are held by said Central Bank and Trust Company as trust investments belonging to holders of these Fractional Certificates of Investment to

the extent of the total amount of said certificates outstanding and are held and owned by said trust accounts in as ample manner and to the same extent as though said securities were physically divisible and filed in the respective trust accounts," etc. The bank then took the money constituting the "Mortgage Pool Account and purchased securities, which it placed in the Pool Account in order to make the Fractional Certificates" total par.

The banking procedures in handling the transactions were described by Mr. Alexander, assistant trust officer of the bank, as follows: "The Central Bank and Trust Company had several departments, one called the Trust Department, one the Insurance Department, another the Bond Department, and perhaps some other departments, and then a Commercial Department. In this Trust Department were handled the funds of guardians, administrators and executors and other fiduciary accounts. There were approximately two hundred of these. In a great many of these accounts there were fragmentary or small balances and the officials of the bank put these small or fragmentary balances of certain of the accounts into an account called the Mortgage Pool Account . . . because individually they were too small to invest in any particular investment, and in the place of the money taken from the various trusts, these Fractional Certificates of Investment were issued to the various trusts. . . . To each of the beneficiary trusts, that is, guardian or administrator as the case may be, there were issued Fractional Certificates of Investment showing his interest in the Mortgage Pool Account. . . . The money was deposited in the Commercial Department of the Central Bank and Trust Company in the name of the Trust Department. . . . The certificate would be filled out, Central Bank and Trust Company as guardian or as administrator or trustee of a certain trust account, number so and so, and also the amount of the certificate would be shown in two places. The amount of cash that appeared as face value for the certificate represented the amount of money taken from that particular trust. . . . If the bank was guardian of John Jones and had in that fund $100.00, and it took that fund to put in the pool, it would issue a certificate to the guardian account of John Jones for $100.00, and set out its proportionate part that he had in that fund or in that investment which they had made, and the account of John Jones would hold the certificate. . . . The certificates never went out of the bank. . . . The bank set up this Mortgage Pool Account, then purchased notes that belonged to some other trust account in the bank, the money simply went from one trust account to another trust account, and the security simply passed from one trust account to another trust account. I would not say that these transactions were mere book entries because checks were always drawn and Fractional Certificates issued and deposited in

the trust which purchased the securities. . . . A check was simply drawn, signed B. W. Barnard, or C. W. Brown, as the case may be, trust officer, and the effect of that was that the same money stayed in the bank but one account debited and the other credited. When they bought securities on the outside the bank, the people from whom they bought the securities got the money. . . . When the Mortgage Pool Account had money on hand and wished to buy securities for the account, the Trust Department would issue its check to the holder of the securities, whoever it happened to be. The check would be made payable to the Central Bank and Trust Company, signed by the Trust Department. It would draw on the Trust Department, charging it to the Mortgage Pool Account, and it would be payable to the Central Bank and Trust Company, and the Trust Department account there would be charged with the amount of the check. The check would be paid as any other check. The Trust Department had an account in the Commercial Department."

When the bank closed on 19 November, 1930, the aggregate face amount of securities purchased by the bank as trustee for the Mortgage Pool Account was $151,867.34, and there was to the credit of said account cash in the amount of $4,072.66. On 11 February, 1933, the plaintiffs were duly appointed trustees for the Mortgage Pool Account by Judge Felix E. Alley. Thereafter, on or about 17 July, 1933, an order was made by Judge P. A. McElroy permitting plaintiffs to file a claim with the defendant for the sum of $60,746.93. The alleged basis of the claim is that the Central Bank and Trust Company, as trustee for the Mortgage Pool Account, took from said account $151,-867.34 and purchased from itself for its affiliated corporations securities which were worth at the time of the purchase only sixty per cent of their face value, thus resulting in a loss of $60,746.93.

At the time the bank closed it had in cash or in depositories approximately $65,000. The plaintiffs alleged and offered evidence tending to show that many of the securities so purchased were procured from the Bond Department, Investment Account, Commercial Department of the Central Bank and Trust Company and from affiliated corporations of the bank.

At the conclusion of the evidence there was judgment of nonsuit, and the plaintiffs appealed.

*T. A. Uzzell, Jr., and William J. Cocke, Jr., for plaintiffs.*

*Alfred S. Barnard, C. I. Taylor, and Johnson, Smathers & Rollins for defendants.*

BROGDEN, J. The paramount question of law produced by the facts is whether the plaintiffs are entitled to a preference.

The right to a preference rests upon two theories:

1. That the facts disclose a deposit for a specific purpose or special deposit.

2. That the bank was trustee *ex maleficio.*

The record discloses that no new money went into the bank by virtue of creating a separate division of the Trust Department, known and designated as the "Mortgage Pool Account." All the money involved was already in the bank and consisted of balances too small for profitable investment. The consolidation of such funds is not deemed to constitute a special deposit for a special purpose within the boundary of the decisions in *Parker v. Trust Co.,* 202 N. C., 230, 162 S. E., 564, and *Flack v. Hood,* 204 N. C., 337, 168 S. E., 520. The assistant trust officer of the bank, testifying in behalf of plaintiffs, described the procedure as follows: "The bank set up this 'Mortgage Pool Account,' it purchased notes that belonged to some other trust account in the bank, the money simply went from one trust account to another trust account, and the security simply passed from one trust account to another trust account. . . . The effect was that the same money stayed in the bank, but one account debited and the other credited." Such banking procedure is apparently no more than the shifting of credits upon the books of the bank.

Nor does the mere fact that a bank holds and dissipates trust funds establish a preference upon its assets in liquidation. *Bank v. Corporation Commission,* 201 N. C., 381; *Hicks v. Corporation Commission,* 201 N. C., 819; *Briggs & Sons, Inc., v. Allen, ante,* 10.

The second theory proceeds upon the principle announced in *Edwards v. Culberson,* 111 N. C., 342, 16 S. E., 233, "that whenever a person has obtained the property of another by fraud, he is a trustee *ex maleficio* for the person so defrauded for the purpose of recompense or indemnity. . . . Equity declares the trust in order that it may lay its hand upon the thing and wrest it from the wrongdoer." See, also, *Bank v. Waggoner,* 185 N. C., 297, 117 S. E., 6. But as pointed out in *Flack v. Hood, supra,* "much of the confusion apparently has come from failure to distinguish between the right of preference, or equity of priority, and the right to have certain specific property returned to the creditors, as under claim and delivery, on the principle of fungible goods or because of direct ownership." In the case at bar plaintiffs were not attempting to recover the particular property or the securities in which the money was invested. The case of *Lauerhass v. Hood,* 205 N. C., 190, 129 S. E., 413, involved the recovery as a preference of losses sustained as a result of selling securities for less than face value. However, the case was decided upon the principle that the money placed in the bank by Lauerhass was a special deposit. The original record

in the case discloses that on 26 January, 1926, Lauerhass deposited certain securities of a substantial amount in the bank and took a receipt from the bank specifying that such funds and securities were "to be held, managed and controlled for his benefit as agents for him," etc.

Upon a consideration of the entire record, the Court is of the opinion that the trial judge ruled correctly.

Affirmed.

SCHENCK, J., took no part in the consideration or decision of this case.