Myers, J.
 

 This is an action instituted under favor of Section 710-92, General Code, whereby the plaintiff seeks to establish a preference in the sum of $543,432.13, being the balance due to plaintiff from defendant, the Superintendent of Banks, as liquidator of The Guardian Trust Company of Cleveland.
 

 The question for decision is whether the second amended petition of the plaintiff states a cause of action. A demurrer thereto was sustained by the Court of Common Pleas and that judgment was reversed by the Court of Appeals. A motion by defendant to certify the record to this court for review was allowed. For brevity we shall hereinafter refer to the second amended petition merely as the petition.
 

 There are three causes of action set forth in the petition. Space will not permit nor do we deem it necessary to repeat the vast number of allegations contained in the petition, but in order that the claim of the plaintiff and his theory of the case may be understood, we copy herewith most of his summarized statement of the ultimate facts in the petition as set forth in his brief:
 

 ‘
 
 ‘
 
 The first cause of action in said petition states that the defendant, The Guardian Trust Company, was appointed and qualified February 10,1932, as executor of the estate of William Davey, Jr. About a year later, February 27, 1933, said trust company was ordered by the Superintendent of Banks to restrict withdrawals of deposits to one per cent, which restriction order continued until June 15, 1933, when the bank was put into liquidation. On April 8, 1933, a conservator was appointed for the bank, who remained in charge until' the order of liquidation was made on June 15, 1933.
 

 
 *474
 
 “In proceedings in the Probate Court The Guardian Trust Company was removed as executor on June 15, 1933, and, on exceptions to its account later filed by the Superintendent of Banks, the court found that the trust company was liable to decedent’s estate for $684,999.38 ‘with such preferences against the estate of said trust company as might be found to exist.’
 

 “Plaintiff was appointed administrator
 
 de bonis non
 
 on June 27, 1933. He duly filed claim as such administrator with the Superintendent of Banks, with the same demands for preferences as now claimed in said petition. The claim was allowed by the superintendent liquidator as a general claim, but all preferences were denied, and thereafter the action here on appeal was commenced, pursuant to General Code Secti.on 710-92, to establish preferences' on the claim as allowed, which then had been reduced by payments to $543,432.13.
 

 “The gist of the first cause of action as alleged is that such $543,432.13 is the balance of the sum of $812,489.11 that The Guardian Trust Company
 
 received into its possession
 
 as executor on February 10, 1932, and then turned around and made an unsecured loan to itself by depositing the whole amount on the banking side of its institution; that there was no power or authority in the bank as such executor to so loan to itself because of conditions then existing, which we later refer to; that title, legal or at least equitable, to the moneys so loaned, remained at all times in the executor, held in trust, and that the money itself which went into a pool of cash in the hands of the trust company on its banking side, remained in such pool and passed with the pool as it then existed in cash, to the superintendent as liquidator; and that plaintiff is entitled to an order on the liquidator to pay over, subject only to the rights of other claimants' establishing like rights in such pooled cash or its proceeds in the hands of the liquidator.
 

 “The basis for the claim that the executor had no
 
 *475
 
 valid power or authority to deposit with itself is that it, as executor, knew at all times that as a banking corporation its financial and ‘moral’ condition was as detailed in the petition, but which we summarize as follows:
 

 “Said executor on February 10,1932, knew that The Guardian Trust Company as a bank was rapidly being drained of its assets; in effect there was a ‘run on the bank’; it had paid out about $53,000,000 in the previous thirteen months, and over $560,000 on the average for each banking day between January 1, 1932, and February 10, 1932; that such bank had exhausted its own available resources to meet demands upon it and had had to borrow $27,000,000, for which loans and to secure deposits of public funds, it had pledged $45,-000,000 of its best assets (practically all thereof); that it could not legitimately increase its borrowings without further hazarding the interests of its unsecured creditors, and could not borrow at all if its real condition were known to possible lenders;
 
 its assets were then of a value less them its liabilities;
 
 it had at least $24,000,000 of irrecoverable and
 
 known
 
 losses which
 
 it had not charged off;
 
 and, except for a comparatively small amount of cash necessary for it to maintain
 
 apparent
 
 ability to carry on at all, it practically had no free assets that were not completely ‘frozen.’ In addition to such financially bad condition it was morally bankrupt, because it had acted fraudulently in concealing its true condition from its own stockholders and the public by falsely reporting its earnings, concealing its losses and padding its public statements and defrauding its trust beneficiaries; and further, such executor knew that such bad condition of the bank’s affairs was1 gradually becoming worse and known to other bankers and the public, which,
 
 if fully known, would require immediate
 
 closing of the bank,
 
 resulting in great loss to ail its unsecured creditors.
 

 
 *476
 
 ‘ ' The second and third causes of action were, in the original petition, stated as one, but on motion of the defendants were ordered to be separated. We still think that they should be considered as one. They together constitute a claim of right to enforce the trust company’s 'bond’ as executor, as provided for by General Code Section 710-161. Each of such causes as stated makes part thereof the allegations of the first cause and further states that the unfaithfulness of the executor in loaning the estate funds to the bank, as it did, was the proximate cause of the failure of such executor to fully account to plaintiff.
 

 ''The gist of the allegations of the second cause of action is such breach of trust; failure to account; that the assets of the closed bank will not pay out more than sixty-five per cent to unsecured creditors; that said bank, before and at closing, had $7,000,000 of a paid in capital fund which must be considered as included within the approximate $80,000,000 of assets taken over by the Superintendent of Banks as liquidator; that such $7,000,000 fund was and is the ‘capital stock’ provided by Section 710-161, to be held as security for the faithful performance of the trust duties assumed by the bank, and the action is to enforce such security, subject to the equal rights' of other like claimants.
 

 ‘ ‘ The third cause of action is framed the same as the second, except it seeks to subject the $100,000 fund deposited with the Treasurer of Ohio for the protection of plaintiff’s assets, but subject to the rights of like claimants’.
 

 “Both the second and third causes of action are alleged to be brought for the benefit of all claimants 'who may join in these proceedings or otherwise establish their claims’ to share in the security so provided. ’ ’
 

 The foregoing is not only a summarized statement of the facts alleged in the petition but it also contains
 
 *477
 
 conclusions' of law.' We shall not attempt to separate the ultimate facts pleaded from the conclusions of law, hut will deal only with those questions material and necessary for a decision in this cause.
 

 The petition of the plaintiff seeks not merely a money judgment. It seeks to establish a preference over general depositors. A careful reading of' the prayer of the petition will reveal that the plaintiff is asking the court in reality to order and make a complete accounting and audit of the affairs of The Guardian Trust Company as of June 15, 1933, in order to ascertain what part, if any, of the cash funds coming into the hands of the Superintendent of Banks belonged to the estate of William Davey, Jr., deceased. Such request is made for the purpose of declaring a trust of certain funds which it is claimed belonged to the plaintiff as a preference.
 

 After The Guardian Trust Company was' taken over by the Superintendent of Banks for liquidation it was removed as executor by the Probate Court. When its account was filed by the Superintendent of Banks the Probate Court found that the trust company was liable to the estate in the sum of $684,999.38 “with such preferences against the estate of said trust company as might be found to- exist.” That amount was reduced' by dividends' to the present claimed amount of $543,432.13. There is no dispute here as to the amount of the claim. The claim was allowed by the Superintendent of Banks as a general claim but all preferences were denied.
 

 The gist of plaintiff’s claim is perhaps best epitomized in the following excerpt from paragraph 18 of the petition of the plaintiff:
 

 “Because of such hazardous condition of the affairs of said trust company on February 10, 1932, known to it in its corporate capacity and as said executor, it also knew in both capacities that said executor acting with proper care and faithful to its trust duties
 
 *478
 
 had no lawful power to hazard the safety of the funds of said estate by making said deposit and said deposited funds at all times remained as trust funds subject to be accounted for as such by said trust company as trust funds in both its capacities. And said trust company in both such capacities was under the duty in faithful performance of its trust at all times after February 10,1932, while it continued as an operating bank, to withdraw such deposited funds from the general cash funds of the bank, which it failed to do to the extent of $543,432.13 and interest as aforesaid.”
 

 While the two sentences quoted are conclusions of law rather than a recital of facts, they state the fundamental position and claim of the plaintiff more accurately and succinctly than any other part of his petition or brief.
 

 The question involved in this action is whether, under the allegations of the petition, the plaintiff is entitled to a preference over other general depositors. The plaintiff does not stress so much the element of a preference but rather a lien for the amount of his claim. In summarizing the prayer of the petition it is stated by him as follows: “That plaintiff be found to have a lien for the amount of his claim on the cash funds taken over by the liquidator or equivalent assets in his hands.” It is also prayed that the bank’s assets be considered as the capital stock fund and that an accounting be had of the $100,000 fund in the hands of the Treasurer of State and that such funds' be subjected to a
 
 lien
 
 to protect the claim of the plaintiff. It matters little, however, whether we use the word “lien” or “preference.” The result in the instant case would be the same. The plaintiff makes no claim for any preferential right in the fund arising from any assessment of double liability of the bank’s stockholders for the reason, as stated by him, that the Constitution sets this up for the benefit of all of the depos
 
 *479
 
 itors of the banking corporation and the Legislature had no power to give any preferential rights thereto to any particular claims. The plaintiff in his brief also recognizes the principle laid down in the first paragraph of the syllabus of
 
 Fulton, Supt. of Banks,
 
 v.
 
 Escamaba Paper Co.,
 
 129 Ohio St., 90, 193 N. E., 758, reading as follows:
 

 “In order to assert successfully a claim for preference in the distribution of the assets of an insolvent bank, a depositor must establish legal or equitable title to the deposits he has made. If title to the funds deposited has passed to the bank he becomes a creditor and, as such, has no valid claim for preference.”
 

 While recognizing the principle laid down in
 
 Fulton
 
 v.
 
 Escamaba Paper Co., supra,
 
 plaintiff, however, contends that the granting of the relief prayed for in the petition would not have the effect of taking something away “from assets belonging to the general creditor.” It is contended by the plaintiff that the title to the funds in question never passed to The Guardian Trust Company in its capacity as a bank and that therefore the general depositors do not, and could not, have any interest or claim on such funds and that therefore the granting of the relief prayed for would not be taking anything away from the assets belonging to the general depositors.
 

 The death of William Davey, Jr., occurred on January 18, 1932. At the time of his death and prior thereto he had two separate savings accounts in The Guardian Trust Company in the approximate total sum of $770,000 and also had a sum of $42,000 in cash in a safely deposit box in the bank. While the petition does not reveal that Davey, Jr., had his funds on deposit with The Guardian Trust Company before his death, it is so stated in the brief of the defendant and admitted in the supplemental brief of the plaintiff. It should be understood however that even though the funds remained in the bank and that the redepositing
 
 *480
 
 was accomplished merely by the transfer of credits, the situation was the same as if the deposit had been made in specie at the time the bank was appointed executor.
 

 The real contest for preference here is not between plaintiff and the Superintendent of Banks, but between plaintiff and the general depositors. When a bank fails it frequently disappears as a responsible party and the rights and equities of depositors must be considered in its liquidation. When William Davey, Jr., by his last will and testament named The Guardian Trust Company as his executor, he thereby named that corporation to act as his legal representative with regard to such funds after his death. By that act he said to the world that in respect to such funds, The Guardian Trust Company in its trust capacity was1 to exercise its judgment in respect to the administration of his estate. In so doing William Davey, Jr., made it possible for The Guardian Trust Company as a corporation to act in a dual capacity — a dual capacity authorized by the statutes of the state of Ohio. This dual capacity of a corporation to act both as a bank and as an executor authorized by the law of the state of Ohio and set in motion by the act of the testator in executing his last will and testament, is primarily responsible for the situation we find in the instant case. The general depositors of the bank are not responsible for such a situation. They dealt with The Guardian Trust Company only as a bank. The law authorizing the trust company to act as an executor is in existence for any one to take advantage of or to let alone as his judgment may dictate. If he takes advantage of the law and chooses a corporate executor authorized under the law, as it then was, to deal with itself in the deposit of trust funds, the testator himself and no one else is responsible for creating the situation where such corporate executor deposits trust funds with itself as a bank. Section 710-165.
 
 *481
 
 General Code, has since been amended (115 Ohio Laws,
 
 287) in
 
 respect to such deposits'.
 

 The Guardian Trust Company was appointed executor of the estate of William Davey, Jr., deceased, on the tenth day of February, 1932, and received into its hands as executor the sum of $812,489.11. This amount was deposited in the banking department of The Guardian Trust Company. The deposit was in the form of a demand savings deposit account drawing 3 per cent interest. Such deposit was lawful under Section 10506-45, General Code, which provides as follows:
 

 “Immediately after his appointment and throughout the administration of the trust, every fiduciary shall be required to deposit all funds received by him, in his name as such fiduciary in one or more depositories. Each depository must be a national bank, or a state bank or building and loan association located within and organized under the laws of the state of Ohio. The deposit shall be in such class of account as will be most advantageous to the trust and each depository shall pay interest at the highest rate customarily paid to its patrons on deposits in accounts of the same class.
 
 A corporate fiduciary authorised by lau> to receive deposits of fiduciaries, shall have authority to be the depository of funds held by it as such fiduciary.”
 
 (Italics ours.) The title to the funds thereby passed to The Guardian Trust Company.
 

 This court has previously ruled on a like question here involved in
 
 McDonald, Admr.,
 
 v.
 
 Fulton, Supt. of Banks,
 
 125 Ohio St., 507,.182 N. E., 504, 83 A. L. R., 1107, in language as follows:
 

 “1. The provisions of Section 710-165, General Code, authorize a bank organized under the laws of this state, with powers of a trust company, to make a general deposit of money received by it as trustee and held temporarily pending investment or distribution, in the commercial or other department of such
 
 *482
 
 bank, unless otherwise expressly provided by the trust agreement creating and controlling such trust.
 

 “2.
 
 As to such funds the relation of the bank and trustee is as debtor and creditor, and funds thus' deposited may be used by the bank in its general business as other assets.
 

 “3. The rights of the trustee, with reference to the funds so deposited, are no greater than or different from those of other general depositors, and upon liquidation of the bank they all share proportionately in the distribution of the assets.”
 

 See also
 
 State, ex rel. Fulton, Supt. of Banks,
 
 v.
 
 Main, Sheriff,
 
 128 Ohio St., 457, 191 N. E., 742; 5 Ohio Jurisprudence, 380, Section 87; 1 Perry on Trusts and Trustees (7 Ed.), 175;
 
 McLawb
 
 v.
 
 Wallace, Recr.,
 
 103 Ind., 562, 5 N. E., 911.
 

 Section 710-165, (General Code, had exactly the same provisions during the transactions of the instant case as in the
 
 McDonald
 
 v.
 
 Fulton case,
 
 although that section has since been amended to make certain trust funds preferred over general depositors.
 

 It is claimed by the plaintiff that The (Guardian Trust Company in its corporate capacity owed the duty to advise its' trust department to withdraw its funds from the bank. If it owed such duty to the executor as a depositor, it owed the same moral duty to every other depositor of the bank. Equity- is equality. A bank is required by law to render and publish periodic reports of its true condition for the benefit of present and prospective depositors, but such duties do not import any obligation or moral right to pass out inside information of its financial condition so as to give one depositor a special advantage over other depositors, and yet the plaintiff urges that since the trust department did not withdraw funds from the bank by reason of
 
 inside information
 
 (the term is ours) it possessed, that a trust of such funds should now be declared in favor of the plaintiff.
 

 
 *483
 
 The testator placed the funds in that bank before he died. When The Guardian Trust Company became executor it redeposited the funds in its' savings department at 3 per cent interest. It was not wrongful or unlawful for the testator to have his funds in that bank until the date of his death, and no one makes any such claim. It was his act to choose the bank as executor as much as it had been his act first to deposit his funds in that institution. However, we do not base the lawfulness of the deposit upon his choice of that bank as a depository before his death. It would have been no different if his money had been in some other bank before his death and then deposited in The Guardian Trust Company. When The Guardian Trust Company was appointed executor a new deposit of the funds was then made in that bank by virtue of the entries on its books. Although imprudent, under Sections 710-165 and 10506-45, General Code, it was lawful. Moreover the deposit was made by the executor over a year before the bank went on a restricted basis. Obviously under such circumstances it would not be equitable to pay this claim in full while permitting other depositors to share only generally.
 
 McDonald, Admr.,
 
 v.
 
 Fulton, supra. Re Garner Banking & Trust Co.
 
 (1933), 204 N. C., 791, 168 S. E., 813.
 

 “According to the great weight of authority the mere facts that the trust relationship exists between the beneficial owner and the bank, and that the trust money or other property came into the custody of the bank while it was a going concern, do not entitle the beneficial owner to a preference or charge with respect to the assets' of the bank in the hands of its receiver.” 82 A. L. R., 46 (52).
 

 It is urged that a trust should be declared in favor of the plaintiff by reason of the fraudulent acts of The Guardian Trust Company for a period of two years or more before the closing of the bank, as alleged in
 
 *484
 
 the petition. By reason of snch alleged fraudulent acts it is' claimed that The Guardian Trust Company as executor could not in good faith make a lawful deposit in that bank even though the statute expressly permitted it. However, the acts of the bank if fraudulent against the estate, were fraudulent against every other depositor of the bank. If false reports were made to the Superintendent of Banks to the detriment of the plaintiff, they were not only fraudulent as to the trust company as executor but likewise fraudulent in respect to every other depositor.
 
 Beacon Mfg. Co.
 
 v.
 
 Hood, Commr. of Banks,
 
 206 N. C., 324, 173 S. E., 309;
 
 Mallett
 
 v.
 
 Tunnicliffe, State Liquidator,
 
 102 Fla., 809, 136 So., 346, 80 A. L. R., 785. If by reason of alleged fraudulent acts the corporation owed the duty to close the bank long before it was placed in liquidation, it owed such duty not only in respect to the trust company as executor but likewise in respect to every other depositor. Such a situation would not warrant a preference for the plaintiff.
 

 The case of
 
 Steele
 
 v.
 
 Commr. of Banks in re Prudential Trust Co.,
 
 240 Mass., 394, 134 N. E., 401, 20 A. L. R., 1203, is in many respects similar to the instant case and by reason thereof we quote from the syllabus as follows:
 

 “A
 
 certain trust company had not been complying with the statutory requirements as to reserves, had not kept the assets in its savings department separate and distinct from its general assets, and had been in an uncertain condition financially for some time but had been able to continue its business. Its officers, while knowing the foregoing facts, had not analyzed the situation but, in accepting deposits, had acted under the hope that the corporation in some way or other would pull through its difficulties and did not anticipate its closing. "Within a few days after certain deposits were made in the commercial department, the commissioner of banks took possession of the bank’s property
 
 *485
 
 and business. Those who made the late deposits sought by bills in equity to recover the deposits on the ground that they were impressed with a trust by reason of insolvency of the bank and the circumstances in which they were received,
 
 Held,
 
 that: (1) In effect the plaintiff sought a preference over the other creditors. (2) No equity was disclosed by reason of which the plaintiff should have such preference.”
 

 In the instant case the trust company, as executor, made the deposit in the bank and left it there exactly the same as all other depositors who failed to withdraw their funds before liquidation. Having acted the same as other depositors of the bank who failed to withdraw their funds, as executor it cannot in good conscience or equity, nor can its successor, be preferred over other depositors. As heretofore observed, this is not merely an action for damages by.a succeeding administrator against the former executor of an estate. It is an action for preference and unless a clear legal right is established such claim cannot prevail. The office of executor or administrator continues as an entity. The individual or corporation executing the trust may change but the duties remain the same. The individual or corporation holding the office may be sued for breach of trust, even after removal, but the plaintiff in this case makes the further claim and urges that in addition to having an action at law for breach of trust, that out of the combined remaining assets of the insolvent banking corporation, now in liquidation, a certain amount should be set aside for payment of his claim in full in preference to general depositors. In order to do that, the facts establishing such preference must be clear and convincing.
 
 Baiar
 
 v.
 
 O’Connell,
 
 365 Ill., 208, 6 N. E. (2d), 140.
 

 Where' parties are equally situated there will be no preference in equity. In the instant case no particular circumstance is shown after the appointment
 
 *486
 
 of the executor and the depositing of the funds in the bank that would in and of itself create a preference for the plaintiff. Nor do the combined allegations contained in the petition. What was being done by the bank before it was closed affected all depositors alike. Under the law a bank cannot in good conscience prefer one depositor over another merely because of some confidential information in its possession. In fact, the law is jealous in regard to equal treatment of depositors. Equity will not permit a director or other official of the bank to use inside knowledge to prefer one depositor over another, and yet that it what is being urged by the appellee in the instant case. It is urged that because the officials knew the bank was in a precarious' condition they should have reached into the fund on behalf of the executor and saved the executor’s deposit before the bank closed. In its dual capacity authorized by law The Guardian Trust Company as executor
 
 could have withdrawn
 
 its account from The Guardian Trust Company as a bank and deposited it elsewhere before it closed or went on a restricted basis and such action would have been legal the same as the withdrawal of any other account by any other depositor. But not having done so, its successor as administrator is on a par in equity with others who failed to withdraw their accounts.
 
 Cooke
 
 v.
 
 Hood, Commr. of Banks,
 
 207 N. C., 14, 175 S. E., 841.
 

 “A
 
 deposit made in the ordinary course of business is presumed to be general, and the burden of proof is upon the depositor to overcome such presumption by proving that the deposit was made upon such terms and conditions as to constitute it a special deposit or a deposit for a specific purpose, as distinguished from a general deposit.”
 
 Northern Sugar Corp.
 
 v.
 
 Thompson,
 
 13 F. (2d), 829 (1926), citing
 
 Craig
 
 v.
 
 Bank of Granby,
 
 310 Mo. App., 334, 238 S. W., 507, 509;
 
 Fraiick
 
 v.
 
 Coeur d’Alene Bank & Trust Co.,
 
 36 Idaho, 108, 210
 
 *487
 
 P., 586, 588;
 
 First National Bank
 
 v.
 
 City National Bank,
 
 102 Mo. App., 357, 76 S. W., 489;
 
 Bank of Blackwell
 
 v.
 
 Dean,
 
 9 Okla., 626, 60 P., 226;
 
 Sheridan
 
 v.
 
 United States,
 
 236 F., 305, 309, 149 C. C. A., 437;
 
 Minard
 
 v.
 
 Watts,
 
 186 F., 245;
 
 Bank of Republic
 
 v.
 
 Millard,
 
 77 U. S., 152, 155, 19 L. Ed., 897.
 

 Although plaintiff, in his brief, claims that the money deposited in the bank by the trust company as executor remained in a so-called “pool” at all times greater than the amount claimed as a preference, the allegations of the petition do not in any manner show wherein the money deposited by the executor was kept separate or apart any more than the money of any other general depositor. There is nothing in the petition identifying or tracing the money deposited by the executor to any
 
 particular
 
 fund at the time when The Guardian Trust Company was closed by the Superintendent of Banks. In fact, the opposite appears from paragraph 17 of the petition reading in part as follows: “Because of such conditions as described, said trust company
 
 * * *
 
 continued as executor instead of resigning and used the funds of said decedent’s estate in its hands as executor as cash reserves for the benefit of said trust company’s general banking-business and to the prejudice of the interests of its trust held as executor.” The foregoing is not only an admission but an assertion that the money deposited by the executor was used in its general banking business by The Guardian Trust Company and thereby obviously mingled with other funds. The instant case is readily distinguished, from
 
 Squire, Supt.,
 
 v.
 
 American Express Co.,
 
 131 Ohio St., 239, for in that case the bank was acting as
 
 agent
 
 for the express company in the sale of travelers cheques. In the instant case the money had been deposited in a s'avings account drawing 3 per cent interest. The petition, therefore, does not show a sufficient tracing of the fund to support a claim for preference.
 

 
 *488
 
 “Where a trustee deposited trust funds to his credit in his own bank, and such funds were commingled with and used as a part of the general funds of the bank, in the ordinary course of its' business, so that the identity of the trust fund was wholly lost, the trust creditor is not entitled to a preference over other creditors out of money left in the bank upon an assignment by the trustee for creditors.”
 
 Chute
 
 v.
 
 Hinman,
 
 34 Ore., 578, 56 P., 412, 47 L. R. A., 265.
 

 In the second and third causes of action set forth in the petition the plaintiff seeks to have the capital stock of The Guardian Trust Company and the fund deposited with the state treasurer impressed with a trust for the benefit of the claim of the plaintiff in preference to claims of general depositors. Section 710-161, General Code, enacted in 1919 reads in part as follows:
 

 “The capital stock of such trust company, with the liabilities of the stockholders existing thereunder, and the fund deposited with the treasurer of state as provided by law shall be held as security for the faithful discharge of the duties undertaken by such trust company in respect to any trust, and no bond or other security, except as hereinafter provided, shall be required from any trust company for or in respect to any trust, nor when appointed executor, administrator, guardian, trustee, receiver, assignee or depositary; * * *.” This language does not import that such funds in the event of insolvency of the trust company shall be used primarily for any particular class of deposits where no right to a preference is otherwise clearly established.
 

 In
 
 Tucker
 
 v.
 
 New Hampshire Trust Co.,
 
 69 N. H., 187, 44 A., 927, it was held that where a banking corporation authorized to receive trust funds and act as trustee under judicial appointment deposits trust funds in its savings department, which afterwards became insolvent, a new trustee will not be a preferred
 
 *489
 
 depositor for the full amount of the trust funds, but will share equally with other depositors. The court in its opinion said: “As to other depositors in the savings department, the plaintiff stands like any one of them and is entitled only to his share. The trust company was as much a trustee of the other depositors in the savings department as it was of the Adams fund, and they must share alike in a distribution of funds derived from the conversion of securities originally held as investments of that department. ’ ’
 

 The same principle applies in the instant case in respect to the distribution of assets on hand at the time of the closing of the bank, including the capital stock, the funds to be derived from double liability of stockholders (then still in effect) and the sum of $100,000 deposited by The Guardian Trust Company with the Treasurer of the state of Ohio. Plaintiff can have no preferred claim in respect to these items, unless such preference is first clearly established as against general depositors. The responsibility of collecting, assembling and administering the aforenamed funds for the benefit of the depositors and creditors of the bank is the function of the Superintendent of Banks as liquidator of The Guardian Trust Company, subject to review as provided by law. In the absence of any allegations to the contrary it must be assumed that the Superintendent of Banks is discharging his duties in respect to such matters. See
 
 Wright
 
 v.
 
 Mc
 
 Cormack,, 17 Ohio St., 86;
 
 Lang
 
 v.
 
 Osborn Bank,
 
 100 Ohio St., 51, 125 N. E., 105;
 
 Andrews
 
 v.
 
 State, ex rel. Blair, Supt. of Banks,
 
 124 Ohio St., 348, 178 N. E., 581, 83 A. L. R., 141.
 

 The petition of the plaintiff reflects the financial condition of The Guardian Trust Company for more than two years prior to its closing by the Superintendent of Banks. There are numerous allegations of wrongful conduct of its officials' principally as a bank but also as executor of the Davey estate. Reduced to
 
 *490
 
 their logical conclusion the allegations of the petition are that the conduct of The Guardian Trust Company both as a bank and as executor was so wrongful that The Guardian Trust Company as executor should have withdrawn its deposit from itself as a bank. Not having done so, it is now being urged by plaintiff, the succeeding administrator, that the* court in equity now order that done which the previous executor, with full knowledge of all the facts, failed to do. Such a contention fails to recognize that the estate as an estate continues even though there may be a change of its executor or administrator. In a situation like the instant case, the administrator of today stands in the shoes of the executor of yesterday in so far as the rights of innocent third parties are concerned. Those third parties in the instant case are the general depositors who were on the same' footing as the executor when it first made its deposit in the bank and on the same footing as the executor when the bank finally elósed. In such a situation there are no equities' in favor of the deposit of the estate over other general deposits. Having had, through knowledge of the bank’s affairs, an opportunity to withdraw its account before the bank closed, the trust company, as manager of the estate, did not do so. In that respect it was not diligent. Equity aids the diligent. In respect to innocent third parties — other general depositors — it does not now avail the present administrator of the estate a preference by alleging that the former executor could and should have withdrawn its money from the bank before it closed. The only reason the trust company, as executor, had knowledge of what was going on was the dual capacity of the corporation authorized by law — one and the same corporation acting as bank and executor. As heretofore observed, the tangled relationship and conflicting interests of The Guardian Trust Company as bank and executor, set forth at length in the petition of the plaintiff, were
 
 *491
 
 not due in any manner whatsoever to any acts of general depositors hut resulted hy reason of the dual capacity which it then occupied and which was made possible by the law and the naming of the trust company as executor. Having arrived at that condition through the wrongful acts of bank and executor, as alleged in the petition, equity will not aid either one or the other or the successor of either, as against the rights of innocent third parties' — here the general depositors. Neither in law nor in equity are we able to find any foundation for a preference in this ease. We find no error in the action of the trial court in sustaining the demurrer to the second amended petition.
 

 The judgment of the Court of Appeals will be reversed and the judgment of the Court of Common Pleas affirmed.
 

 Judgment reversed.
 

 Weygandt, C. J., Matthias, Day and Gorman, JJ., concur.
 

 Zimmerman, J., not participating.